UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOSEPH S. HEARD,

    Plaintiff,

    v.

    Civil Action No. 02-296 (CKK)

DISTRICT OF COLUMBIA, *et al.*,

    Defendants.

**FILED** ✓

SEP 2 9 2003

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**MEMORANDUM OPINION**
(September 29, 2003)

Currently pending before the Court is Defendants' Motion to Dismiss. Plaintiff opposes Defendants' motion. After considering Defendants' motion, Plaintiff's opposition, Defendants' Reply, and the relevant law, the Court shall grant Defendants' motion in part and deny it in part.

## I: BACKGROUND

Plaintiff Joseph S. Heard ("Plaintiff" or "Heard") filed the above-captioned Complaint on February 15, 2002, alleging that Defendants District of Columbia Government and District of Columbia Department of Corrections violated his constitutional rights, rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, civil rights under 42 U.S.C. §§ 1983 & 1988, and committed various torts. Compl. ¶ 1. The Complaint alleges the following facts.

Plaintiff is a deaf man who communicates through American sign language, and is unable to communicate through reading, writing, or lipreading. *Id.* ¶¶ 16-17. On or about November 15, 1998, Plaintiff was arrested and charged with unlawful entry at George Washington University, in Washington, D.C. *Id.* ¶ 18. All charges were dismissed by Judge Campbell of the

(N)

19

Superior Court of the District of Columbia on October 13, 1999, and Plaintiff was ordered released from custody. *Id.* 18-19. Instead of being released, Plaintiff was transported to the District of Columbia Jail where he was held for the next 670 days in solitary confinement at the jail's Mental Health Unit. *Id.* ¶¶ 20-22. At the jail, Plaintiff was subjected to "medical evaluation, testing and treatment, all without any opportunity for him to communicate effectively with Defendants." *Id.* ¶¶ 23-24. Plaintiff maintains that "Defendants knew that [he] was a deaf person, and also knew that he communicates in sign language," but that they still did not provide him with "qualified sign language interpreters [or] . . . access to a TDD or closed captioning." *Id.* ¶¶ 25-27. Because of this failure to provide services, Plaintiff was unable to contact family, friends or attorneys for support or for legal assistance to be released from the prison. *Id.* ¶ 29. Plaintiff claims that his treatment violated Defendants' own rules and regulations. *Id.* ¶¶ 32, 34-35.

Plaintiff's Complaint alleges 11 counts. Count I asserts a violation of Plaintiff's Fourth Amendment rights. *Id.* ¶ 41. Count II alleges a violation of Plaintiff's Fifth Amendment rights. *Id.* ¶¶ 48-52. Count III alleges a violation of Plaintiff's Eighth Amendment rights. *Id.* ¶¶ 53-59. Count IV alleges a violation of Plaintiff's Fourteenth Amendment rights. *Id.* ¶¶ 60-64. Count V asserts violations of Plaintiff's Civil Rights under 42 U.S.C. § 1983. *Id.* ¶¶65-67. Count VI alleges a violation of the ADA. *Id.* ¶¶ 68-73. Count VII asserts a violation of Section 504 of the Rehabilitation Act. *Id.* ¶¶ 74-86. Count VIII alleges a false imprisonment claim. *Id.* ¶¶ 87-91. Count IX asserts a claim for intentional infliction of emotional distress. *Id.* ¶¶ 92-93. Count X alleges that Defendants were negligent in their supervision, training and maintenance of their personnel. *Id.* ¶¶ 94-97. Finally, Count XI alleges that Defendants violated the D.C. Human

Rights Act. Plaintiff seeks declaratory judgment relief, declaring that Defendants discriminated against him on the basis of disability, compensatory and punitive damages, and attorneys' fees and costs. *Id.* ¶¶ 101-104.

## II: LEGAL STANDARD

Defendants have moved to have the District of Columbia Department of Corrections dismissed from the case, to have all claims for punitive damages dismissed, and to have Counts I-V and VIII-XI dismissed, all pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def.'s Mot. to Dismiss ("Def.'s Mot.") at 1.

In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court will not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Accordingly, at this early stage in the proceedings, the Court assumes the veracity of all factual allegations set forth in Plaintiff's Complaint. *See Doe v. United States Dep't of Justice*, 753 F. 2d 1092, 1102 (D.C. Cir. 1985). Moreover, "[t]he complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). Nonetheless, the Court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).

## III: DISCUSSION

Defendants' Motion raises numerous arguments. The Court will address each in turn, beginning with Defendants' challenges to Plaintiff's claims.

*A.*     ***Plaintiff's Constitutional and Civil Rights Act Counts (Counts I-V)***

Defendants contend that Count IV of Plaintiff's Complaint, which alleges violations of

Plaintiff's Fourteenth Amendment[1] rights should be dismissed because "[t]he Fourteenth

Amendment applies to the States, and the District is not a State." Defs.' Mem. of P. & A. in

Supp. of Mot. to Dismiss ("Defs.' Mem.") at 9 n.1; *see also Bolling v. Sharpe*, 347 U.S. 497, 498

(1954) ("The Fifth Amendment which is applicable in the District of Columbia, does not contain

an equal protection clause as does the Fourteenth Amendment which applies only to the states.").

Plaintiff does not address this argument, and appears to have conceded the point by dropping all

reference to the Fourteenth Amendment in his Opposition. *See* Pl.'s Mem. in Opp'n to Defs.'

Mot. to Dismiss ("Pl.'s Mem.") at 1 ("Mr. Heard filed a complaint against the District of

Columbia and the District of Columbia Department of Corrections for violating his rights under

the Fourth, Fifth, and Eighth Amendments to the United States Constitution. . . ."); *see also id.* at

9, 11-12.  The Court shall therefore dismiss Count IV of Plaintiff's Complaint.

Defendants argue that all of Plaintiff's remaining constitutional claims must be subsumed

within his Section 1983 claim.[2]  Defs.' Mem. at 2.  Plaintiff does not contest this point, and in

---

[1] Section one of the Fourteenth Amendment provides in part
No State shall make or enforce any law which shall abridge the privileges or
immunities of citizens of the United States; nor shall any State deprive any person
of life, liberty, or property, without due process of law; nor deny to any person within
its jurisdiction the equal protection of the laws.
U.S. Const. amend. XIV , § 1.

[2] Section 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or immunities secured by the

fact appears to agree with Defendants. *See* Pl.'s Mem. at 9 ("These are clearly cognizable claims pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Eighth Amendments."), 11-12 (". . . Mr. Heard asserts a number of <u>distinct</u> claims pursuant to 42 U.S.C. § 1983 . . . . These allegations amount to the most grievous violations of his Fourth, Fifth, and Eighth Amendment rights.") (emphasis in original). Given the parties' agreement on the matter, the Court finds that Counts I (Fourth Amendment), II (Fifth Amendment), and III (Eighth Amendment), are dismissed.[3]

Next, Defendants assert that Plaintiff's Section 1983 claim must be dismissed because it does not "state a claim against the District government under the standards for municipal liability under Section 1983 laid down by the Supreme Court and our Court of Appeals." Defs.' Mem. at 7. The Supreme Court has held that municipalities may be subjected to suit under Section 1983, but that

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly

---

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
>
> 42 U.S.C. § 1983.

[3] Count V of Plaintiff's Complaint alleges his Section 1983 claim, and includes the following statement: "Defendants' conduct and actions were perpetrated with a wilful and wanton indifference to and a deliberate disregard of Plaintiff's Fourth, Fifth, Eighth and Fourteenth Amendment rights and his statutory rights pursuant to 42 U.S.C. § 1983." Compl. ¶ 66. Therefore, even though the Court shall dismiss Counts I, II and III, Plaintiff's Fourth, Fifth and Eighth Amendment claims remain in his Complaint.

> be said to represent official policy, inflicts the injury that the government as an entity
> is responsible under § 1983.

*Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694-95 (1978).  The

Supreme Court has also articulated a "failure to train" basis for establishing Section 1983

liability against a municipality.  *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).  However,

> the inadequacy of policy training may serve as the basis for § 1983 liability only
> where the failure to train amounts to deliberate indifference to the rights of persons
> with whom the policy come into contact. . . .  Only where a failure to train reflects
> a "deliberate" or "conscious" choice by a municipality – a "policy" as defined by our
> prior [municipal liability] case – can a city be liable for such a failure under § 1983.

*Id.* at 388.

Defendants attack the sufficiency of Plaintiff's Complaint.  Specifically, they argue that

Plaintiff has not identified the official policy or custom that resulted in Plaintiff's alleged

injuries, and note that the only time policies and customs are alleged in the Complaint occurs

when Plaintiff asserts that Defendants violated his rights by *not* following such policies or

customs.  Def.'s Mem. at 9 (citing Compl. ¶¶ 21, 32, 34, 35).  However, the Supreme Court and

this Circuit have made clear that a "plaintiff alleging municipal liability under section 1983 may

not be held to a heightened pleading standard."  *Atchinson v. District of Columbia*, 73 F.3d 418,

421 (D.C. Cir. 1996) (citing *Leatherman v. Tarrant County Narcotics Intelligence &

Coordination Unit*, 507 U.S. 163, 163-69 (1993)).  The basic test for whether or not a complaint

is sufficient is whether or not it provides "the defendant fair notice of what plaintiff's claim is

and the grounds upon which it rests."  *Id.* at 421 (citing *Conley*, 355 U.S. at 47).  A complaint

"need not allege all that a plaintiff must eventually prove."  *Id.* at 422.  As noted above, a

complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

The Court agrees that Plaintiff's Section 1983 count could be better pled; however, it does not conclude that Plaintiff has shown beyond doubt that he cannot prove his claim. To be certain, Plaintiff has provided Defendants no notice that one of their policies or customs resulted in Plaintiff's injury. As noted above, the only reference to official policies or customs are to those that were *not* followed or in existence.[4] However, Plaintiff does allege in paragraph 33 that "Defendants failed to train their employees, agents and staff as to the rights of individuals with disabilities, in particular, the federally protected right to effective communication." Compl. ¶ 33. This allegation, incorporated into Plaintiff's Section 1983 count, *see id.* at 12, in addition to Plaintiff's allegations regarding his treatment at the D.C. Jail, is sufficient to support his Section 1983 *claim*, although clearly Plaintiff needs to provide more information to *prove* his claim, *see Atchinson*, 73 F.3d at 422.[5] Accordingly, the Court shall not dismiss Plaintiff's Section 1983

---

[4] Plaintiff's Opposition brief alleges that his
constitutional rights were violated both as a result of (1) the Defendants' policy or custom of maintaining patently inadequate record keeping and review of systems and procedural checks; (2) their custom of failing to follow inadequate policies to insure the propriety of an inmate's status, and (3) their custom or policy of failing to perform the obviously necessary training and supervision of its staff with respect to detention and release of citizens.
Pl.'s Mem. at 12. In ruling on a 12(b)(6) motion that has not been converted to a motion for summary judgment, the Court cannot look to facts beyond the pleadings. *Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997) (citing *Henthorn v. Dep't of the Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994). Plaintiff requests, in a footnote, "that should this Court find a need for further allegations with respect to Mr. Heard's Complaint, he be given the opportunity to amend." Pl.'s Mem. at 13 n.4. The Court notes that the Federal Rules of Civil Procedure provide the appropriate method and procedures for amending a complaint.

[5] Defendants argue that Plaintiff in Count X alleges that Defendants were negligent in their training of personnel. Defs.' Reply at 9 (citing Compl. at 19). Such an allegation,

claim.

**B.      *Plaintiff's District of Columbia Law Claims (Count VIII-XI)***

Defendants argue that Plaintiff's claims under D.C. law are all barred because he failed to

comply with notice requirements. Defs.' Mem. at 10.  D.C. law provides that

> [a]n action may not be maintained against the District of Columbia for unliquidated
> damages to person or property unless, within six months after the injury or damage
> was sustained, the claimant, his agent, or attorney has given notice in writing to the
> Mayor of the District of Columbia of the approximate time, place, cause, and
> circumstances of the injury or damage.  A report in writing by the Metropolitan
> Police Department, in regular course of duty, is a sufficient notice under this section.

D.C. Code § 12-309.  The D.C. Court of Appeals has declared that failure to satisfy this statute is

fatal to a litigant's cause of action.

> Section 12-309 is not, and does not function as, a statute of limitations.  Rather, it
> imposes a notice requirement on everyone with a tort claim against the District of
> Columbia, and compliance with its terms is mandatory as a prerequisite to filing suit
> against the District.
>      Moreover, because it is in derogation of the common law principle of
> sovereign immunity, section 12-309 is to be construed narrowly against claimants.
> Unless it demonstrates compliance with the requirements of § 12-309, a plaintiff's
> suit against the District is properly dismissed because no right of action or
> entitlement to maintain an action accrues.

*District of Columbia v. Arnold & Porter*, 746, A.2d 427, 436 (D.C. 2000) (citations and

quotation marks omitted).  Defendants argue that Plaintiff's notice to the District of Columbia

was deficient in the detail provided and was untimely. Defs.' Mem. at 10-17.  Plaintiff counters,

---

according to Defendants, effectively concedes that any failure to train was not the result of
"deliberate indifference" as required to establish Section 1983 liability.  This argument is directly
contrary to Rule 8(e)(2) of the Federal Rules of Civil Procedure which provides that "[a] party
may set forth two or more statements of a claim or defense alternately or hypothetically, either in
one count or defense or in separate counts or defenses. . . .  A party may also state as many
separate claims or defenses as the party has regardless of consistency and whether based on legal,
equitable, or maritime grounds." Fed. R. Civ. P. 8(e)(2).

arguing that his notice to the District of Columbia was timely and sufficiently detailed. Pl.'s Mem. at 13-19.

The Court begins with the issue of D.C. Code § 12-309's six-month time limit. Plaintiff filed his notice on August 20, 1999, "one week after he was discharged from the D.C. Jail." Pl.'s Mem. at 13. Plaintiff maintains that he therefore met the six-month time limit, but in the event that he did not, the time limit should be tolled due to the fact he was incarcerated and unable to communicate for the two years prior to the filing of his notice. *Id.* at 13-14.

The D.C. Court of Appeals has been clear that "under section 12-309, the six-month clock begins to run from the moment the plaintiff sustains the injury, not from the moment a cause of action accrues." *District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995). Furthermore, the D.C. Court of Appeals has stated that tolling the notice period "would totally frustrate the legislative intent" behind Section 12-309, and therefore has declined to allow the six-month time period to be tolled. *Id.* at 1360 (quoting *Gwinn v. District of Columbia*, 434 A.2d 1376, 1378 (D.C. 1981)). That court has also declined to permit the application of the discovery rule to Section 12-309. *Id.* This Court is bound to follow the pronouncements of the D.C. Court of Appeals on the proper construction of D.C. statutes. *See Hunter v. Ark Restaurants Corp.* 3 F. Supp. 2d 9,16 (D.D.C. 1998).

Plaintiff argues that three decisions by the D.C. Court of Appeals suggest that the six-month time limit may be tolled "when governmental interference makes compliance impossible or unreasonable." Pl.'s Mem. at 15. First, Plaintiff cites to *Hill v. District of Columbia*, even though in that case the D.C. Court of Appeals affirmed the dismissal of a suit for failure to give notice within the six-month time limit. 345 A.2d 867 (D.C. 1975). In that case, the court stated:

9

"Irrespective of whether we would construe our statute as providing an additional period for

compliance where the fault of the government makes timely compliance unreasonable or

impossible–an issue we need not now decide–we must affirm the order of dismissal in this case."

*Id.* at 869-70.

Second, Plaintiff cites *Gwinn v. District of Columbia*, a decision which also affirmed the

lower court's dismissal of a complaint for failure to satisfy the notice requirement.  434 A.2d

1376 (D.C. 1981).  Plaintiff cites to a footnote at the very end of the case in which the court notes

that

> [b]y our decision today, we have left unanswered the question of whether the
> statutory period of § 12-309 is tolled for a claimant when the fault of the government
> makes timely compliance unreasonable or impossible.  *See Hill v. District of
> Columbia, supra.*  As we noted in *Hill*, other jurisdictions having similar notice
> statutes are divided on whether their respective notice provisions should be tolled
> under such circumstances.

*Id.* at 1379 n.4.

Finally, Plaintiff cites to *Doe By Fein v. District of Columbia*, another case whereby a

lower court's finding that the plaintiff had not complied with the notice requirements was upheld

by the D.C. Court of Appeals.  697 A.2d 23 (1997).  In *Doe*, the court stated, again in a footnote,

that "[w]e suggested in *Gwinn* that a tolling exception might be warranted in situations where the

government 'takes some action that makes timely compliance unreasonable or impossible.'

Assuming for the sake of argument that such an exception is possible, it does not fit this case."

*Id.* at 30 n. 10 (citation omitted).

Plaintiff's citation to these cases is unavailing.  All of the language relied upon in these

decisions is *dicta*, suggesting the potential for adopting an exception to the general rule but

10

declining to do so.  Furthermore, the latest of these cases, in rejecting the plaintiff's request that

the deadline be tolled, states: "We are bound by *Hill*, as well as *Gwinn*, and conclude that these

two cases preclude us from recognizing any equitable tolling exception." *Id.* at 30.  The *Doe*

court noted the harshness of the result of its decision, but noted that "we are bound by our prior

decisions, which make inexorably clear that it is the role of the legislature, not this court, to

create exceptions to the statute." *Id.* at 31.  Since the D.C. legislature has not acted, this Court

too is bound by the D.C. Court of Appeal's decisions.

Plaintiff's last chance to avoid the harshness of the D.C. law is his "continuing

violations" doctrine argument.  Raised in a footnote, and only specifically addressing his false

imprisonment claim, Plaintiff argues that his detainment was a continuous and repetitious wrong

that fulfills the requirements of the continuing violations doctrine and thereby makes his notice

timely under Section 12-309.  Pl.'s Mem. at 16 n.6.  However, the D.C. Court of Appeals has

held that "once the plaintiff has been placed on notice of an injury and the role of the defendants'

wrongful conduct in causing it, the policy disfavoring stale claims makes application of the

'continuous tort' doctrine inappropriate." *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 548

(D.C. 2002) (quoting *Hendel v. World Plan Executive Council*, 705 A.2d 657, 667 (D.C. 1997)).

Plaintiff does not address the issue of when he was on notice of his injury in his Complaint or in

his Opposition brief.  Furthermore, the D.C. Court of Appeals has commented that

> [i]n certain types of cases--for example, cases involving claims of occupational
> injury--the wrongfulness and injuriousness of tortious activity may be discernible
> only from the continuation over time of a course of conduct.  Thus, we have said that
> "[i]f the continuing tort has a cumulative effect, such that the injury might not have
> come about but for the entire course of conduct . . ., then all damages caused by the
> tortious conduct are recoverable even though some of the conduct occurred outside
> the limitations period." [John] *McShain [Inc.]* [*v. L'Enfant Plaza Props., Inc.,*] 402

11

A.2d [1222,] 1231 n. 20 [(D.C. 1979)] (emphasis added).  It makes sense to say that the running of the limitations period is tolled until the continuation of the wrongful conduct renders the existence of the cause of action sufficiently manifest to permit the victim to seek recovery.

*Beard*, 790 A.2d at 547.  Here, Plaintiff provides the Court with no basis for finding that he would not have been aware of his cause of action absent its continuation.  Accordingly, the Court shall dismiss Counts VIII (False Imprisonment), IX (Intentional Infliction of Emotional Distress), and X (Negligent Supervision, Training and Maintenance of Personnel).

With respect to Count XI, Plaintiff's D.C. Human Rights Act ("DCHRA") claim, Plaintiff contends that Section 12-309 does not apply.  As Plaintiff argues, the statute "applies only to actions sounding in tort." *District of Columbia v. Campbell*, 580 A.2d 1295, 1302 (D.C. 1990).  Furthermore, Plaintiff notes that Defendants have not provided a single case that applies Section 12-309 to the DCHRA.  Pl.'s Mem. at 20.  Defendants do not respond to this point in their Reply brief, and the Court's own research has produced no such cases.  The Court therefore finds that Section 12-309 does not apply to Plaintiff's DCHRA claim.  The Court must therefore consider Defendants' other arguments regarding this count of Plaintiff's Complaint.

Defendants also contend that Plaintiff's DCHRA claim is barred by his failure to exhaust administrative remedies.  Defs.' Mem. at 16.  Defendants point to the decision in *Armstrong v. District of Columbia Public Library*, 154 F. Supp. 2d 67 (D.D.C. 2001) as supporting their view.  *Id.* at 16-17.  The Court, however, cannot follow the *Armstrong* decision, as it appears to be based on a statute that has been amended.  The *Armstrong* court interpreted Section 1-2543 of the D.C. Code, now amended and recodified at 2-1403.03, which the court noted was

entitled "Establishment of procedure for complaints filed against District government," [and] reads as follows

12

> *Notwithstanding any other provision of this chapter*, the Mayor shall
> establish rules of procedure for the investigation, conciliation, and
> hearing of complaints filed against District government agencies,
> officials and employees alleging violations of this chapter.

D.C. Code Ann § 1-2543 (emphasis added).

*Armstrong*, 154 F. Supp. 2d at 72. In 2002, the statute was amended to its present form,

providing

> (a) The Mayor shall establish rules of procedure for the investigation, conciliation,
> and hearing of administrative complaints filed against District government agencies,
> officials and employees alleging violations of this chapter. The final administrative
> determination in such matters shall be made by the Mayor or his designee.
> (b) A person claiming to be aggrieved by an unlawful discriminatory practice on the
> part of District government agencies, officials, or employees may elect to file an
> administrative complaint under the rules of procedure established by the Mayor under
> this section or a civil action in a court of competent jurisdiction under § 2-1403.16.

D.C. Code. 2-1403.03. Given the changes made to the statute, particularly the addition of

subsection (b), the *Armstrong* decision is inapplicable to the present case. The Court finds that

given the plain language of subsection (b), and the fact Defendants' arguments relied solely on

*Armstrong*, Defendants' exhaustion argument lacks merit.

Finally, Defendants argue that "the DCHRA does not confer any private right of action in

this case. The Human Rights Act is essentially a public accommodations statute, and it contains

a detailed definitional section of the facilities to which it applies. The D.C. Jail is not one of

them." Defs.' Mem. at 17. Plaintiff objects to this argument, and Defendants do not address it in

their Reply brief.

Plaintiff's argument begins by noting that the DCHRA provides that "[a] person claiming

to be aggrieved by an unlawful discriminatory practice . . . may elect to file . . . a civil action in a

court of competent jurisdiction." D.C. Code § 2-1403.03. The DCHRA defines "unlawful

13

discriminatory practice" as those "specified in subchapter II of Unit A" of the act.  D.C. Code

§ 2-1401.02.  Plaintiff notes that under subchapter II's section titled "Prohibited Acts of

Discrimination," the statute provides:

> Every individual shall have an equal opportunity to participate fully in the economic,
> cultural and intellectual life of the District and to have an equal opportunity to
> participate in all aspects of life, including, but not limited to, in employment, in
> places of public accommodation, resort or amusement, in educational institutions, in
> public service, and in housing and commercial space accommodations.

D.C. Code. § 2-1402.01.  Using this language, Plaintiff argues that contrary to Defendants'

characterization, the DCHRA is more than a public accommodation statute, and that his situation

is covered by the Act as "[h]e is a person 'aggrieved by an unlawful discriminatory practice' in a

'public service.'"  Pl.'s Mem. at 26.  The Court agrees that the DCHRA is more than a public

accommodations statute, but disagrees with Plaintiff's reading of § 2-1402.01.  That provision

provides that every individual shall "have an equal opportunity to *participate* in all aspects of

life, including . . . public service."  D.C. Code. § 2-1402.01 (emphasis added).  This plain reading

of the statute makes clear that even if Plaintiff were correct that he was discriminated against "in

a public service," the statute does not apply to such a situation.[6]  Furthermore, Plaintiff does not

allege that he was denied the opportunity to participate in public service.  As Plaintiff provides

no other basis for establishing his DCHRA claim, and admits that the D.C. Jail is not a place of

public accommodation covered by the Act, Pl.'s Mem. at 27; *see also* D.C. Code § 2-

---

[6] For this same reason, Plaintiff's argument regarding the Supreme Court's decision in
*Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 204 (1998) is inapposite.  *See* Pl.'s Mem.
at 27 n.18.  In that decision, the Supreme Court found state prisons to fall within the definition of
"public entity" under the ADA. *Yeskey*, 524 U.S. at 210.

1401.02(24), the Court shall dismiss this count of Plaintiff's Complaint.[7]

## C.   *Propriety of District of Columbia Department of Corrections as a Defendant*

Defendants charge that Defendant District of Columbia Department of Corrections is not

a suable entity and must be dismissed from all counts of Plaintiff's Complaint. Defs.' Mem. at 1-

2. The D.C. Court of Appeals has held that

> [a]n entity formed by Congress may not be sued unless Congress so authorizes explicitly (or impliedly if the entity derived its existence from a suable entity). *Blackmar v. Guerre*, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952). A noncorporate department or other body within a municipal corporation is not *Sui juris. See* 3 McQuillin Municipal Corporations § 12.40 (3d ed. 1973). Cases in this jurisdiction have consistently found that bodies within the District of Columbia government are not suable as separate entities. *Roberson v. District of Columbia Board of Higher Education*, D.C. App., 359 A.2d 28, 31 n. 4 (1976) (Bd. of Higher Education not a suable entity) (dictum); *Miller v. Spencer*, D.C. App., 330 A.2d 250, 251 n. 1 (1974) (Dept. of Sanitation); *Miller v. Board of Education of District of Columbia*, 106 F. Supp. 988 (D.D.C. 1952).

*Braxton v. Nat'l Capital Housing Auth.*, 396 A.2d 215, 216 (D.C. 1978). Plaintiff's arguments

do not address the question of whether the D.C. Department of Corrections is *Sui juris.*

---

[7] Plaintiff makes one other argument on this point. Plaintiff's argument, *in toto*, is as follows:

> In addition, the application of the DCHRA specifically extends to agencies of the District of Columbia. For example, D.C. Code. § 2-140[3].03 explicitly states that "the Mayor shall establish rules of procedure for investigation, conciliation, and hearing of complaints filed against District government agencies. . ." (emphasis added). It is logical to infer that this language refers to complaints filed under the DCHRA against the District of Columbia agencies. Jails are not places of public accommodation. The D.C. Jail–the Department of Corrections–is a government agency which falls within the purview of the DCHRA.

Pl.'s Mem. at 27 (footnotes omitted). In a footnote, Plaintiff adds that "D.C. Code [*sic*] 2-1403.01 recognizes that the term 'discrimination, in accordance with . . . 2-1402.01' (defining prohibited acts to include discrimination in public service) includes discrimination 'against any person . . . by . . . city officials, or city agencies. . ." *Id.* at 27 n.17. Neither of these provisions provide Plaintiff with a DCHRA claim; rather, they establish that the city and its agencies may be sued under the Act. The fact that the city and its agencies may be sued does not establish that Plaintiff has a valid cause of action under the Act.

Decisions in this District have found that the D.C. Department of Corrections is not a suable

entity. *See Arnold v. Moore*, 980 F. Supp. 28, 33 (D.D.C. 1997) ("Governmental agencies of the

District of Columbia are not suable entities or *non sui juris*. Therefore, all of plaintiff's claims

against the District of Columbia Department of Corrections must be dismissed."); *Gainza v. D.C.*

*Dep't of Corrections Detention Center*, Civ. A. No. 91-423(SS), 1991 WL 166580, at * 2

(D.D.C. Aug. 9, 1991). The Court shall therefore dismiss the D.C. Department of Corrections

from this suit.

**D.     *Punitive Damages***

        Defendants argue that all of Plaintiff's claims for punitive damages are not recoverable as

a matter of law. Defs.' Mem. at 2. Plaintiff had sought punitive damages for all of the counts of

his Complaint, but withdrew his requests for punitive damages for his ADA and Rehabilitation

Act claims after the Supreme Court's decision in *Barnes v. Gorman*, 536 U.S. 181 (2002).

Therefore, the only surviving count for which Plaintiff seeks punitive damages is Count V.

        Count V of Plaintiff's Complaint alleges a violation of 42 U.S.C. § 1983 and seeks,

among other relief, twenty million dollars in punitive damages. Compl. at 12. The Supreme

Court has addressed the question of whether punitive damages are available against a

municipality, holding "that a municipality is immune from punitive damages under 42 U.S.C. §

1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 245, 271 (1981); *see also Daskalea v.*

*District of Columbia*, 227 F.3d 433, 446 (D.C. Cir. 2000). In reaching its decision, the Supreme

Court observed that

            punitive damages imposed on a municipality are in effect a windfall to a fully
            compensated plaintiff, and are likely accompanied by an increase in taxes or a
            reduction in public services for the citizens footing the bill. Neither reason nor

justice should be visited upon the shoulders of blameless or unknowing taxpayers. *City of Newport*, 453 U.S. at 267. Following this statement, in a footnote, the Supreme Court noted that "[i]t is perhaps possible to imagine an extreme situation where the taxpayers are directly responsible for perpetrating an outrageous abuse of constitutional rights. Nothing of that kind is presented by this case. Moreover, such an occurrence is sufficiently unlikely that we need not anticipate it here." *Id.* at 267 n.29. Plaintiff concedes that his position is against "the weight of authority," but argues that his case was what the Supreme Court envisioned when it articulated the possible exception to its general rule barring punitive damages against municipalities. Pl.'s Mem. at 7. He also argues that discovery will assist him to make out this claim. *Id.* Plaintiff does not, however, provide any basis for this Court to conclude that it is possible that the District of Columbia *taxpayers* are *directly* responsible for the alleged violation of his rights. *See generally id.;* Compl. In the absence of any such allegation, the Court finds that there is no support for Plaintiff's request for punitive damages under Section 1983 and therefore dismisses the request.

## IV: CONCLUSION

After reviewing Defendants' Motion to Dismiss, Plaintiff's Opposition, and Defendants' Reply, the Court shall grant Defendants' Motion in part. The Court shall dismiss Counts I-IV, and VIII-XI of Plaintiff's Complaint for failure to state claims upon which relief may be granted. The Court shall also dismiss Plaintiff's request for punitive damages in Count V of the Complaint. Finally, the D.C. Department of Corrections shall be dismissed as a Defendant in

*O2cr 296*

this action.

Date:    September 29, 2003

COLLEEN KOLLAR-KOTELLY
United States District Judge