IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOSEPH S. HEARD, )
)
       Plaintiff, )
)
v. ) No. 1:02CV00296 (CKK)
)
DISTRICT OF COLUMBIA )
GOVERNMENT, ET AL., )
)
       Defendants. )
_____)

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS PURSUANT TO FED. R. CIV. P. 54(d)

### INTRODUCTION

On August 4, 2005, the Court entered judgment in favor of plaintiff Joseph Heard against defendant District of Columbia in the amount of $1.1 million, plus reasonable costs including reasonable attorneys' fees.[1] As described in greater detail below, Goodwin Procter has carefully reviewed the billing records of the attorneys involved in this case and has exercised sound billing judgment to reduce or exclude certain time entries. As a result, plaintiff respectfully seeks $1,103,697 in legal fees and $71,013.36 in costs.[2]

Under Local Rule 54.2, this Court may either require the filing of Mr. Heard's fee petition within fourteen (14) days and require the District's adversary submissions thereafter (see

---

[1] In federal civil rights litigation, including claims brought under 42 U.S.C. § 1983 and the Americans with Disabilities Act (such as this action), the prevailing party is entitled to reasonable attorneys' fees and costs. See 42 U.S.C. § 1988(b) ("the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs"); 42 U.S.C. § 12205 (similar provision under the Americans with Disabilities Act). In addition, in the parties' Stipulation for Entry of Consent Judgment, the District agreed to pay Mr. Heard's "reasonable costs, including reasonable attorney's fees as agreed to by the parties or determined by the Court." Exhibit A.

[2] These amounts reflect Mr. Heard's legal bills through July 31, 2005. Mr. Heard reserves the right to request – and will indeed seek – compensation for any additional time and costs expended working on this petition beyond that date.

Fed. R. Civ. P. 54(d)(2)(B) and (C)), or it may delay the filing of the fee petition (by as much as 60 days) in order to give the parties time to negotiate over fees (see LCvR 54.2(a)). Because the parties agree that additional time is unlikely to lead to a settlement of the attorneys' fee issue, the parties agree that further delay of the kind anticipated by LCvR 54.2 is unnecessary.[3] Consequently, the District has authorized Mr. Heard to represent that it joins our request for a prompt resolution of Mr. Heard's petition under Fed. R. Civ. P. 54(d)(2), rather than under Local Rule 54.2.

In resolving the petition under Fed. R. Civ. P. 54(d)(2), the Court must determine the reasonable amount of attorneys' fees to award plaintiff in this matter. It does so by multiplying the reasonable number of hours expended in the case by the reasonable hourly rate for each attorney, law clerk, and paralegal. See *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). The resulting "lodestar" amount is considered a reasonable measure of the fee portion of litigation costs. *Blanchard v. Bergeron*, 489 U.S. 87, 94-95 (1989). Because the hourly rates of his lawyers and the number of hours they spent were reasonable, Mr. Heard respectfully requests that his fee petition be paid in full.

I.      **Plaintiff's Requested Hourly Rates are Reasonable.**

The D.C. Circuit has adopted a three-factor analysis for determining reasonable hourly rates. The Court should consider "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107.

---

[3] On March 1, 2005, Mr. Heard forwarded to the District his then-current Invoice for fees and costs accrued as of that date. See Exhibit B (cover letter). During the intervening time, the District has never been prepared to engage in negotiations over fees and finally communicated on July 18, 2005 that it declined to do so. See Declaration of John Moustakas ¶ 212 (Exhibit C).

2

### A. The requested rates are the usual billing rates of plaintiff's attorneys.

For attorneys in private practice, the first factor – the attorney's customary billing rate – is the most important. See, *e.g., Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1521, 1524 (D.C. Cir. 1988) (en banc) ("*SOCM*").[4] The attached declaration from John D. Aldock, managing partner of Goodwin Procter's Washington, D.C. office, sets forth the customary billing rates for the lawyers, law clerks, and paralegals at Goodwin Procter who worked on this case. See Declaration of John D. Aldock ¶ 37 (Exhibit D). Plaintiff has also attached affidavits from original counsel W. Thomas Stovall II and Othello G. Jones, Jr., which set forth their usual hourly billing rates for the relevant years. See Exhibit E at ¶ 4 (Stovall) and Exhibit F at ¶ 3 (Jones). Those are the billing rates that should be used in calculating the attorney's fees to which plaintiff is entitled in this action.

### B. The rates requested for plaintiff's attorneys are justified by their skill, experience, and reputation.

The second factor for determining reasonable hourly rates is the skill, experience, and reputation of the attorney. See *Blum*, 465 U.S. at 896 n.11; *SOCM*, 857 F.2d at 1524. The Court has had ample first-hand opportunity, through its review of pleadings and during hearings and conferences in this case, to make its own direct assessment of plaintiff's attorneys and their work. In addition, the skills, experience, and reputations of plaintiff's attorneys are documented in the attached Declarations of Messrs. Moustakas, Aldock, Stovall, and Jones. See Exhibits C, D, E, and F, respectively. In particular, the three principal Goodwin Procter attorneys who worked on this case – John Moustakas, Paul Friedman, and Adam Chud – are highly qualified

---

[4] See also *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) ("[A]n attorney's usual billing rate is presumptively the reasonable rate."); *Nat'l Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F. 2d 1319, 1326 (D.C. Cir. 1982) ("*NACV*") ("[T]he actual rate that applicant's counsel can command in the market is itself highly relevant proof of the prevailing community rate"). See, *e.g., Bolden v. J & R Inc.*, 135 F. Supp. 2d

3

attorneys with excellent reputations, whose hourly billing rates appropriately reflect their respective legal experience in the District of Columbia legal marketplace for complex federal litigation. See Aldock Declaration at ¶¶ 4-30. The other attorneys and paralegals who worked on this case also possess the skills and experience required to justify their billing rates. See *id.* at ¶¶ 31-36.

### C. The rates requested for plaintiff's attorneys are in line with prevailing rates in the Washington, D.C. legal community.

The third factor relates to evidence of the prevailing market rates in the relevant legal community. Prevailing market rates for legal services can be established through declarations of knowledgeable attorneys and market surveys. See *Covington*, 57 F.3d at 1109.

#### 1. Knowledgeable third-party attorneys confirm that the rates requested by plaintiff's attorneys are within the prevailing market rates.

As set forth in attached Declarations of three leading members of the D.C. bar – John Payton of Wilmer, Cutler, Pickering, Hale and Dorr LLP; James J. Sandman of Arnold & Porter, LLP; and Anthony Herman of Covington & Burling – Goodwin Procter's billing rates for attorneys, law clerks, and paralegals during 2004 and 2005 were either in line with or lower than the rates charged by comparable District of Columbia law firms for their attorneys at the same experience levels, as well as for their law clerks and paralegals. See Exhibits G, H, and I, respectively. See also Aldock Declaration at ¶ 41; Stovall Affidavit at ¶ 5; Jones Affidavit at ¶ 4.

#### 2. The rates requested by plaintiff's attorneys are consistent with those reflected in recent surveys of the D.C. legal market.

Exhibits J and K are surveys published by CourtEXPRESS that reflect the billing rates for attorneys of relevant experience levels from bankruptcy court fee applications by comparable

---

177, 179-80 (D.D.C. 2001) (awarding Crowell & Moring its customary hourly rates for work done for paying clients).

firms for the years 2004 and 2005 in the District of Columbia market.[5] They reveal that the billing rates for the Goodwin Procter attorneys were in the middle to low end of the range for each experience level. Goodwin Procter competes with those firms to provide legal services in the District of Columbia market. See Aldock Declaration at ¶ 42.

In addition, Exhibit L is a national survey of billing rates of associates for 2004 published in the National Law Journal.[6] The billed rates for Goodwin Procter's associates for 2004 are below the average of the rates for those firms, which compete in the D.C. marketplace with Goodwin Procter. See Aldock Declaration at ¶ 43.

## II. The Number of Hours for Which Plaintiff Seeks Compensation is Reasonable.

Mr. Heard's counsel was required to complete a multitude of tasks in order to diligently and successfully represent Mr. Heard in this case. The declaration of John Moustakas provides a detailed, but non-exhaustive, listing of over 100 specific tasks, grouped by category. See Exhibit C at ¶¶ 11-132.

Litigation of this matter was very time consuming and costly for many reasons:

- First, the case involved complex legal issues requiring time-consuming legal research and innovative thinking – made especially necessary by the District's formidable legal team. See Moustakas Declaration at ¶¶ 137-159.

- Second, the factual challenges to litigating the case, including identifying the proper individual defendants and witnesses and attempting to piece together a comprehensive account without the assistance of the plaintiff, were substantial. *Id.* at ¶¶ 160-170.

---

[5] These surveys show the rates for timekeepers from Baker & McKenzie; LeBoeuf, Lamb, Greene & MacRae, LLP; Nixon Peabody LLP; Sidley Austin Brown & Wood LLP; Swidler Berlin Shereff Friedman LLP; Wiley Rein & Fielding; Winston & Strawn LLP; and Kirkpatrick & Lockhart Nicholson Graham LLP.

[6] The four Washington-area law firms whose rates are set forth in chart format are Crowell & Moring; Hogan & Hartson; Patton Boggs; and Wiley Rein & Fielding.

5

- Third, Mr. Heard's physical and mental disabilities significantly increased the difficulties of this litigation. Mr. Heard is deaf and non-speaking, which disabilities required the employment of interpreters in order to be able to effectively communicate with him. Mr. Heard is also mentally retarded, functionally illiterate, and sometimes delusional. These disabilities, coupled with the fact that Mr. Heard was living in Florida and often moving around without keeping counsel informed of his address, made for exceptionally-difficult communications between lawyer and client. Beyond these communications difficulties, plaintiff's mental disabilities also made relying upon him as an accurate factual reporter a dubious proposition and greatly complicated the process for responding to defendant's discovery requests. *Id.* at ¶¶ 171-178.

- Fourth, the District of Columbia chose to litigate this case in a manner that significantly increased costs. It threw up every conceivable obstacle in an attempt to undermine Mr. Heard's legitimate claims by withholding discovery, contesting every point, systematically attempting to back out of agreements with plaintiff that considerably increased the burdens on plaintiff's counsel, taking inconsistent positions each time it changed counsel, and, to the very end of the settlement negotiations of this case, failing to respond to the most basic requests for cooperation that would have greatly streamlined the litigation of this case. *Id.* at ¶¶ 179-197.

- Fifth, the District's conduct with respect to settlement negotiations greatly increased costs. For almost fourteen months after Goodwin Procter noticed their appearances in this case, the District declined to seriously discuss settlement, forcing the case into a full-on trial mode with all the attendant costs. Then, when the District finally went into settlement mode, it constantly changed its position on the form of the settlement, again increasing costs as we were

6

required to research each new form of settlement proposed and its impact on possible settlement with, or trial against, other parties to the litigation. *Id.* at ¶¶ 198-202.

Consistent with the mandate of *Hensley v. Eckerhart,* 461 U.S. 424 (1983), plaintiff's attorneys kept detailed, contemporaneous records of their time. See Moustakas Declaration at ¶¶ 214-217. The work on the case is captured in a detailed Invoice. See Exhibit M.

Plaintiff's counsel has also reduced the number of hours for which recovery is sought in an exercise of billing judgment. Apart from routine daily reductions, plaintiff has made further reductions in excess of $70,000. Counsel for plaintiff has written off entirely the time of two senior attorneys who provided valuable advice on litigation and settlement strategy, all time expended by seventeen (17) separate timekeepers who worked on a variety of research assignments or other projects related to the case, and a portion of research time by various law clerks and associates. In addition, counsel for plaintiff has not billed any time for more than three attorneys at internal and external meetings or for more than two lawyers at depositions, and has written off all time investigating a special needs trust for Mr. Heard, even though some of that work was crucial to evaluation of the settlement offers. See Moustakas Declaration ¶¶ 218-219.

After exercising this billing judgment, plaintiff seeks compensation for fees in the amount of $1,103,697. The breakdown among the law firms involved is as follows:

| | |
|---|---|
| Goodwin Procter: | $962,097 |
| W. Thomas Stovall II: | $61,200 |
| Othello G. Jones, Jr.: | $80,400 |
| Total: | $1,103,697 |

See Exhibit M (Goodwin Procter Invoice as of July 31, 2005); Exhibit E (Affidavit in Support of Attorneys' Hours and Fees of W. Thomas Stovall II); Exhibit F (Affidavit in Support of Attorneys' Fees by Othello G. Jones, Jr.).

### III. Plaintiff is Entitled to Reasonable Attorneys' Fees for All Work Performed By Counsel Through the Resolution of This Fee Petition.

One issue upon which the parties were unable to agree in the Stipulation for Entry of Consent Judgment, and that they have left open for the Court to decide, is whether plaintiff is legally entitled to recover the reasonable attorneys' fees incurred after the District tendered its Offer of Judgment to Mr. Heard on February 3, 2005 – an Offer never accepted and, indeed, superseded by subsequent negotiations. See Stipulation for Entry of Consent Judgment ¶ 1 (Exhibit A). While plaintiff expects the District to argue that fees should be cut off as of February 3 (because it expressed that view in the Stipulation), as we now show, the District's argument is wrong on both the law and the facts.

First, and most fundamentally, an Offer of Judgment cuts off attorneys' fees as of the date the Offer is made only if either (a) the Offer is accepted, or (b) the Offer is not accepted and plaintiff's ultimate recovery does not exceed the amount of the Offer. Here, plaintiff did not accept the February 3, 2005 Offer of Judgment because it would have required the release of CCHPS and its named employees – a term unacceptable to Mr. Heard. Moreover, Mr. Heard's ultimate recovery also far exceeded the amount of the Offer. Since Mr. Heard recovered substantially *more* from the parties required to be released by the Offer of Judgment than the amount specified, the District's Offer of Judgment could not have the effect of cutting off plaintiff's fees as of February 3, 2005.

Independently, the February 3rd Offer of Judgment cannot limit Mr. Heard's attorneys' fees because it was nullified and superseded by the Stipulation for Entry of Consent Judgment.

8

Throughout settlement discussions, the District repeatedly changed the form of the settlement document that it required – from its initial Offer of Judgment (February 3, 2005), to a "release" (March 7), to a revised Offer of Judgment (April 4) (which it never tendered to Mr. Heard), to a "settlement agreement and an offer of judgment" (April 6), to a Consent Judgment (May 17), which the parties finally executed on June 15. See Moustakas Declaration at ¶ 201. In the end, the District specifically required that the case *not* be resolved by way of an Offer of Judgment, but instead by a Stipulation of the parties. Having taken that position, it cannot now try to claim any benefits that might have flowed from plaintiff's rejection of an Offer of Judgment that was superseded by the Stipulation for Entry of Consent Judgment. See *Hutchison v. Wells*, 719 F. Supp. 1435, 1444 (S.D. Ind. 1989) ("Rule 68 does *not* apply to situations where an offer of judgment was followed by a settlement rather than a trial.").[7]

Therefore, pursuant to 42 U.S.C. §§ 1988 and 12205, the Court should award plaintiff his reasonable costs and attorneys' fees from the inception of this action until this Motion is finally resolved.[8]

### IV. Plaintiff's Other Requested Costs Are Reasonable.

Plaintiff seeks compensation for reasonable expenses incurred by the law firm of Goodwin Procter in the amount of $71,013.36. See Exhibit M (Goodwin Procter Invoice). This does not include expenses that were cut from the Invoice, including transportation and necessary

---

[7] That the District initially made an Offer of Judgment did not preclude the District from making a subsequent Offer (see Fed. R. Civ. P. 68), or, for that matter, attempting to resolve the action in an agreement that was not an Offer of Judgment and lacked the legal significance of such an Offer. Indeed, that is precisely what happened here.

[8] It would, moreover, be highly inequitable to cut off Mr. Heard's right to recover fees and costs as of February 3, 2005, because the District's conduct caused counsel to incur significant additional fees after that time. Counsel's ethical obligations to Mr. Heard, which required the performance of significant work to both evaluate and discuss settlement and keep the merits of the action moving forward while settlement was discussed, did not cease when the District made its Offer of Judgment. Had the District not changed its mind as to the form of the settlement no less than five (5) times – each requiring research, careful consideration, and consultation with the guardian – then the additional fees incurred for work performed subsequent to February 3, 2005 would have been largely unnecessary.

litigation support expenses such as computer scanning. Mr. Heard is entitled to recover his reasonable costs of this litigation. See Court's Judgment herein; 42 U.S.C. §§ 1988(b), 12205; Stipulation for Entry of Consent Judgment (Exhibit A). Plaintiff is not seeking reimbursement for expenses incurred by any of his other attorneys.

## CONCLUSION

For the reasons set forth above, plaintiff respectfully requests that this Court award him reasonable attorneys' fees in the amount of $1,103,697, and reasonable costs in the amount of $71,013.36.

Respectfully submitted,

John Moustakas (D.C. Bar No. 442076)
Paul R. Friedman (D.C. Bar No. 113852)
Adam M. Chud (D.C. Bar No. 468443)
Goodwin Procter LLP
901 New York Ave., N.W.
Washington, D.C. 20001
Tel.: (202) 346-4000
Fax: (202) 346-4444

*Counsel for Joseph Heard*

Dated: August 4, 2005