## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSEPH H. HEARD                              )
                                             )
                    Plaintiff,               )
                                             )        Civil Action No. 02-0296 (CKK)
          v.                                 )
                                             )
DISTRICT OF COLUMBIA, *et al.,*              )
                                             )
                    Defendants.              )
_____)

     Defendant District of Columbia, through counsel, hereby opposes plaintiff's petition for attorney's fees as follows:

## I.  CASE BACKGROUND

     On November 15, 1998, Joseph Heard, an individual who suffers from a number of physical and mental disabilities, was arrested and charged with disorderly conduct in the Superior Court of the District of Columbia.  Mr. Heard spent the next 11 months in St. Elizabeth's Hospital because his competency was at issue.  On November 15, 1999, the criminal charge against him was dismissed and the court ordered him released from custody.  Rather than be released, Mr. Heard was sent to the District of Columbia Central Detention Facility where he spent the next 22 months incarcerated.

     Following his release from jail, Mr. Heard came to be represented by attorneys Othello G. Jones and W. Thomas Stoval who ultimately filed suit on his behalf.  In response to defendant's motion to dismiss the court dismissed all of the common law claims in the case against the District of Columbia.  In late December of 2003, it appears that attorneys Stoval and Jones were terminated from the case.  They were replaced at that time by the law firm of

Goodwin and Proctor.

During all of 2004 and into February of 2005, plaintiff's §1983 and Americans with Disabilities Act claims were litigated. Goodwin and Proctor amended the complaint and discovery commenced. As is common in many cases, discovery disputes arose that had to be resolved by the court. A guardian ad litem was appointed by the court for Mr. Heard because of his disabilities. The parties engaged their own experts, none of whom were ever deposed. Mr. Heard was also evaluated by medical experts retsined by plaintiff as well as defendant.

On February 3, 2005, the District of Columbia served upon plaintiff pursuant to Rule 68 of the Federal Rules of Civil Procedure, an offer of judgment in the amount of 1.1 million dollars plus reasonable attorney's fees. On February 16, 2005 plaintiff requested that the offer of judgment be left open because counsel required more time to consider the offer. The District of Columbia agreed to keep the offer of judgment open with the proviso that if the offer was accepted plaintiff's claim for attorney's fees would be cut off as of February 3rd. See Declaration of DeBerardinis, Exhibit I.

During the next several months into the month of May plaintiff continued to request that the offer of judgment remain open with the same proviso that attorney's fees would terminate as of February 4th. See Declaration DeBerardinis. In May of 2005, Jonathan Stern, the guardian ad litem in this case contacted below-signed counsel and requested that the offer of judgment remain pen with the same proviso regarding the cut-off date for attorney's fees. See Declaration DeBerardinis

Finally in June of 2005, plaintiff agreed to accept defendant's offer of judgment for $1,100,000 plus reasonable attorney's fees. Because of Mr. Heard's disabilities, the case could not be concluded by plaintiff merely filing an acceptance of the offer of judgment with the court,

pursuant to Rule 68 of the Federal Rules of Civil Procedure. Instead the court had to make a finding as to whether $1,100,000 was sufficient compensation for Mr. Heard given the circumstances of the case. On August 4, 2005 the court entered a consent judgment, requiring the District of Columbia to pay Mr. Heard the amount of $1,100,000 plus reasonable attorney's fees. Because of certain advantages to Mr. Heard, his guardian ad litem petitioned the court to approve payment of the consent judgment to a special needs trust. Said petition has been approved by the court.

In other words, the litigation of this matter concluded without the need for the parties to complete discovery, file or respond to dispositive motions, prepare for trial, try the case or litigate post trial motions. The only matter open in this case is a determination of a "reasonable" attorney's fee for plaintiff's counsel. Plaintiff has filed a fee petition pursuant to 42 U.S.C. §1988 seeking an award of $141,600 for attorneys Stoval and Jones and an award of $962,097 for the law firm of Goodwin and Proctor plus expenses of $71,013.36. . As argued below, attorneys Stoval and Jones are not entitled to any compensation and the amount requested by Goodwin and Proctor is not reasonable and should be substantially reduced.

## II. LEGAL FRAMEWORK

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988 provides:

> In any action or proceeding to enforce a provision of section
> 1981, 1982, 1983, 1985, and 1916 of this title…the court in
> its discretion may allow the prevailing party… a reasonable
> attorney's fee as part of the costs.

Thus, the plaintiff first must be a "prevailing party" to recover an attorney's fee under §1988. *Hensley v. Eckerhart,* 461 U.S. 424 (1983). To qualify as a prevailing party, a civil rights plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought.

*Farrar v. Hubby*, 506 U.S. 163, 111 (1992). Once a party is deemed to have prevailed, the court's task is to calculate a reasonable award. In calculating such an award, the "lodestar," or the number of hours reasonably expended is determined, then multiplied by a reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Copeland v. Marshall,* 205 U.S. App. D.C. 390, 641 F.2d 880, 891 (D.C. Cir. 1980); *Clark v. Marsh*, 609 F. Supp. 1028, 1031 (D.D.C. 1985). A reasonable fee is one that is "adequate to attract competent counsel, but which does not produce windfalls to attorneys." See *Blum,* 465 U.S. at 893-94, (quoting S. Rep. No. 1011, p.6 (1976)); *see also Farrar v. Hobby*, 506 U.S. at 113-15.

While the court is expressly empowered to exercise its discretion in determining the amount of the fee award, the plaintiff still bears the burden of establishing all requisite elements of the claimed fee award, including entitlement to an award, the documentation of appropriate hours and justification of the reasonableness of their rates. *See* 42 U.S.C. §19889(b*); Blum,* 465 U.S. at 896 n. 11; *Hensley,* 461 U.S. at 437. In *Hensley*, the Supreme Court made it clear that the party seeking to collect attorney's fees bears the burden of proof as to the reasonableness of the claimed amount stating: "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. Thus, the fee movant bears the burden of establishing the hours claimed and submitting adequate evidence to support this claim. *Id.; see also Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). Accordingly, the burden of production, as well as the burden of persuasion, related to the reasonableness of the amount of hours billed always rests upon the claimant. See *American Petroleum Institute v. EPA*, 72 F.3d 907, 915 (D.C. Cir. 1996); *Covington,* 57 F.3d at 1109.

Additionally, as articulated by the Court in *Hensley,* counsel for a prevailing party must demonstrate that they have exercised "billing judgment."  As stated by the Court in

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended."  *** Cases may be overstaffed, and the skill and experience of lawyers vary widely.  Counsel for the prevailing party should make a good faith effort to exclude from a request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.  "In the private sector, "billing judgment' is an important component in fee setting. It is no less important here.  Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

Hensley, 461, U.S. at 434 quoting  *Copeland v. Marshall*, 641 F.2d at 891, (en banc).

 Attorneys who have exercised billing judgment must specifically identify any hours that were excluded from a fee petition and indicate the tasks to which those hours were devoted. *Cook v. Block*, 608 F. Supp. 1036, 1041 (D.D.C. 1985).

## III. ARGUMENT

### A.  Attorneys Stoval and Jones are not Entitled to an Award of Attorney's fees.

Othello G. Jones and W. Thomas Stoval, in their words, "commenced representation" of plaintiff Joseph Heard on August 16, 2001 and "terminated representation"  on December 31, 2003.  Points and Authorities of Stovall ¶ 7.  During this time period, these attorneys claim to have interviewed a number of people and to have performed legal research as well as file a complaint and a response to defendant's motion to dismiss.  See generally Points and Authorities of Jones and Stoval.   Specifically, Mr. Stoval claims to have spent 306 hours essentially reviewing records and interviewing unnamed individuals who are identified by organization only and whose relationship with this particular case is unknown.  Mr. Jones contends that he spent 402 hours on the case.

Combined, they claim that they are entitled to a fee of $141, 600.00. As a matter of law, they are entitled to nothing.

Although it is unclear who did the hiring and who did the terminating, it is apparent that the attorneys were simply fired from the case because they lacked the skills to litigate Mr. Heard's claim. John Moustakas, the lead attorney for the firm of Goodwin and Proctor, who succeeded Stoval and Jones, conceded that "predecessor counsel were overwhelmed by the task of prosecuting the case and bringing it to trial." Moustakas Declaration ¶134. Furthermore, according to Mr. Moustakas, new counsel was required because the case had to be litigated "skillfully." *Id.* at ¶137. In other words, attorneys Jones and Stoval were terminated from the case because they lacked the skills required in representing a client in a § 1983 case. The pair were fired from the case for good cause and as a result they are not entitled to any attorney's fees. *See Greenberg v. Sher*, 567 A.2d 882, 884 (D.C. 1989) (assertion that attorney was fired for good cause is legitimate defense to payment of attorney's fees).

Moreover, attorneys Stoval and Jones have done an abysmal job of submitting evidence in support of their fee request. Neither individual has submitted contemporaneous billing records as required in this jurisdiction. *See In re Donovan*, 877 F.2d 982 (D.C. Cir. 1989). Mr. Stoval for his part blames a computer problem for his lack of records. Mr. Jones inexplicably fails to explain his failure to provide contemporaneous billing records or reconstructed ones for that matter.

As previously stated, the law in this jurisdiction requires that fee applications include contemporaneous time records. In *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319 (D.C.Cir. 1982), the court established the standard for recordkeeping

Casual after-the-fact estimates of time expended on a case are

> insufficient to support an award of attorneys' fees.  Attorneys
> who anticipate making a fee application must maintain contemporaneous, complete and
> standardized time records which accurately reflect the
> work done by each attorney.

*Id.* at 1326.

This requirement was reaffirmed several years later in *In re Donovan*, 877 F.2d 982 (D.C.

Cir. 1989).  In that case, the court stated:

> Turning to issues which generally affect attorneys' fee requests,
>  this court will require that fee applications include contemporaneous
>  time records of hours worked and rates claimed, plus a detailed
> description of the subject matter of the work with supporting documents,
>  if any.

*Id.* at 994.  *See also Keenan v. City of Philadelphia*, 983 F.2d 459 (3d Cir. 1992) (noting that the

D.C. Circuit, unlike others, strictly requires contemporaneous time records); *New York State*

*Ass'n for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir. 1983) (changing the Second

Circuit's law to align with what it characteries as  D.C,, Circuit's mandatory requirement of

contemporaneous time records).

The District of Columbia is not unmindful that this court has found the complete denial

of attorney's fees for failure to maintain contemporaneous records to be a harsh sanction that the

court is reluctant to impose.  *State of New York v. Microsoft Corp.,* 297 F. Supp 2d 15 (D.D.C.

2003).  In *Microsoft,* however, the fee petitioner made a concerted effort to reconstruct its

records and to provide sufficient information from which the court could have a degree of

confidence that much of the time requested was reasonably expended.  *Id* at 38. *See also Yohay*

*v. Alexandria Employees Credit Union,* 827 F.2d 967, 974 (4th Cir. 1987) (fee petitioner lacking

contemporaneous billing records must provide adequately reconstructed time records); *Freiler v.*

*Board of Education,* 185 F.3d 337, 349 (5th Cir. 1999) (reconstructed billing records must be

adequate for the court to determine reasonableness of request).

In the case at bar, the affidavits provided by attorneys Stoval and Jones are utterly lacking in any detail from which the court could conclude that the hours that they expended are reasonable. The affidavits are devoid of such basic information as the subject matter of research, the identities of persons who were interviewed and the amount of time that was allegedly spent on each task. Consequently, the court lacks sufficient information from which it could conclude with the necessary "high degree of certainty" that the request is reasonable. *See In re Donovan*, 877 F.2d 982, 995 (D.C. Cir. 1989)

More importantly, it is a dubious proposition that any of the alleged research, document review and investigation conducted by attorneys Stoval and Jones had any value to the case. It is evident from a review of the fee petition that the firm of Goodwin and Proctor essentially started from square one upon entering the case. There is absolutely no indication that any of the alleged research, document review or interviews purportedly conducted by attorneys Smith and Jones were somehow incorporated into the efforts of Goodwin and Proctor. See Moustakas Declaration ¶132. It would be manifestly unjust to require the District of Columbia to compensate attorneys Stoval and Jones for work that never advanced the litigation of this case.[1]

## The Hourly Rate of Goodwin and Proctor Attorneys, Paralegals and Law Clerks should be Reduced to the Rates of the Laffey Matrix

In determining an appropriate hourly rate, courts reviewing a §1988 fee petition utilize a "market rate" analysis. Reasonable fees under §1988 are to be calculated according to the prevailing market rate in the relevant community. *Blum v. Stenson,* 465 U.S. 886, 895 (1984). Thus, prevailing parties must offer evidence to demonstrate "their attorney's experience,

---

[1] If the court is of a mind to award a reduced amount to the terminated attorneys, defendant suggests that the award be limited to a total amount of $16,000 to be divided by the attorneys based upon 20 hours to file the complaint, 20 hours to file an opposition, 20 hours to review records and 20 hours of interviews at $200.00 per hour. Even this limited amount is overly generous because the attorneys have not demonstrated entitlement to fees at all.

skill, reputation and the complexity of the case" and "must produce data concerning the prevailing market rate in the relevant community for attorneys of reasonably comparably skill, experience and reputation." *Covington v. District of Columbia 57* F.3d 1101, 1108 (D.C. Cir. 1995).

Plaintiff's fee petition attempts to establish a market rate for what it terms "complex federal litigation." Fee petition p.4. Plaintiff's methodology for establishing such rates is to inform the court of the fees that it charges for "litigation" and also provide the court with information as to the general hourly fees charged by a number of large law firms in the District of Columbia. Such a methodology is too broad and should have been far more refined to include information as to hourly fees that have been claimed in § 1983 cases *See Kattan v. District of Columbia,* 995 F.2d 274 (D.C. Cir. 1993).

In *Kattan*, a prevailing plaintiff in a case brought pursuant to the Education for All Handicapped Children Act (EHC) appealed the trial court's reduction of the hourly fee claimed by plaintiff's counsel in the fee petition. In affirming the hourly rate reduction, the court noted with approval that the trial court's setting of an appropriate hourly rate was based in part upon "reports of similar cases in which fees were awarded for similar work." *Kattan,* 995 F.2d at 278. In other words, in setting an hourly rate, the court required information as to the hourly rate approved in other EHC cases. *See also Save Our Cumberland Mountains Inc. v. Hodel*, 857 F.2d 1516, 1521 (D.C. Cir. 1988) (fee award should compensate attorneys at rates commensurate with attorneys doing the same sort of work in same area).

In *Buffington v. Baltimore County*, 913 F.2d 113 (4th Cir. 1990), a prevailing party in a §1983 case provided the trial court with information regarding the market rates that its attorneys charged private clients as well as the hourly rates charged by other large firms in the city of

Baltimore. On appeal, the court held that such information did not provide the court below with sufficient information to set an hourly rate, because plaintiff had not provided the court with specific information as to the rates charged and ultimately approved in other §1983 cases. *Id.* at 129. *See also Beard v. Teska*, 31 F.3d 942 (10th Cir. 1994) (market rate in IDEA case is the market rate in IDEA cases not what attorney charged in other types of cases).

Moreover, although this fact is glossed over by plaintiff, John Moustakas, lead counsel in this case, had little or no civil litigation experience before commencing the litigation of the case at bar.[2] One of the initial time entries in the invoice of Goodwin and Proctor is an entry on Jan. 2, 2004, for time expended in obtaining an "ECF" registration for Mr. Moustakas that would allow him to file documents electronically in this court. Evidently, prior to that date, Mr. Moustakas had not been involved in civil litigation in this courthouse.[3]

Similarly, the §1983 experience of Adam Chud is unclear. It is claimed that he has "experience" in civil rights litigation. Aldock Declaration ¶ 27. However, specifics as to this experience are noticeably absent. On the same note, there is no doubt that Paul Friedman is an outstanding member of the bar but as discussed below the tasks that he covered in this particular case are not on a par with his accomplishments in other cases. As argued below, many of his tasks in this particular case simply do not command the premium billing rate that he requests. See Section E.3 *infra.*

The District of Columbia in no way means to imply that Goodwin Proctor attorneys are anything other than first rate attorneys. The issue before that court, however, is not whether

---

[2] Lack of civil experience on the part of Mr. Moustakas who has spent most of his career in criminal law may well be the reason that plaintiff attempts to define the relevant market as "federal litigation" as opposed to "federal civil litigation."

[3] This may explain why it took 45 minutes on 12/31/03 for his firm to file electronically a notice of appearance on his behalf, an event that should have taken no more than two minutes to accomplish.

counsel are first rate but what is the appropriate level of compensation in this particular case. *See Buffington v. Baltimore County*, 913 F.2d 113 (4th Cir. 1990) (issue is not general experience and skill of counsel but rather particular experience of counsel in civil rights cases); *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) (hourly rate in §1983 case should be based upon lawyer's experience in civil rights or analogous cases).

Given that plaintiff has not provided the court with information concerning the hourly rates awarded in § 1983 cases, the court should utilize the Laffey Matrix[4] in establishing an hourly rate for plaintiff's counsel.[5] *District of Columbia v. R.R.* 2005 WL 2461899 (D.D.C. Oct. 6, 2005) (court relies upon Laffey Matrix as prevailing community rate and reduces requested hourly rate to that level); *Watkins v. Vance*, 328 F.Supp.2d 23 (D.D.C. 2004) (prevailing market rate is Laffey rate and any request in excess of that amount will be reduced accordingly); *Blackman v. District of Columbia,* 59 F.Supp.2d 37 (D.D.C. 1999) (same).

Defendant has recalculated Goodwin and Proctor's fee utilizing the Laffey Matrix. See Exhibit 2.

---

[4] The use of the Laffey Matrix in fee litigation in the District of Columbia can be traced to the case of *Laffey v. Northwest Airlines, Inc.,* 572 F. Supp. 354 (D.D.C. 1983) aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir 1984) cert. denied 472 U.S. 1021 (1985), In *Laffey,* the court recognized that the matrix was developed to reflect rates charged by attorneys with exceptional experience, expertise and reputations. The court stated that the matrix developed in that case was designed to reflect rates paid to attorneys of prominence and ability in premier firms. *Laffey,* 572 F. Supp. at 372. Since 1983, the Civil Division of the United States Attorney's Office for the District of Columbia has updated the matrix to reflect increases in the cost of living. The current Laffey Matrix is provided to the court as Exhibit 9.

[5] Although plaintiff is entitled to bill time for law clerks and paralegals, plaintiff has not provided any justification for billing them out at rates in excess of the Laffey Matrix.

### C. **Plaintiff's Fee Request for Preparation of the Fee Petition should be Sustantially Reduced**

Defendant concedes that plaintiff is entitled to fees for hours reasonably expended in the preparation of the fee petition. Nevertheless, defendant takes exception to the number of hours and amount billed by plaintiff for the fee petition. The billing records of plaintiff for the fee petition are contained in Exhibit 3 for the courts review. These records reveal the following time allocations for preparation of the fee petition.[6]

| | | |
|---|---|---|
| 1. Research | 76.2 hours | $33,594.70 |
| 2. Preparation of affidavits and declarations | 58 hours | $24,229.00 |
| 3. Meetings and conferences re: fee petition | 42.2 hours | $18,159.00 |
| 4. Review of invoice | 22.3 hours | $8,618.00 |
| 5. Preparation of Brief | 53 hours | $24, 229 |
| Total Hours | 251.7 hours | |
| Total Amount Requested | | $108,829.70 |

The brief itself is less than 10 pages long. It does not contain anything that can be described as complex legal analysis or discussion. A majority of the cases that it cites can be found in the footnotes contained in the Laffey Matrix. The remaining citations are to the leading cases in this jurisdiction as to fee petitions; cases that are familiar to any practitioner experienced in §1983 litigation. Information as to the billing rates of major law firms is readily available. Perhaps most troubling, despite the expenditure of 251.7 hours of time, the petition fails to assist the court in the most fundamental way by grouping the time entries by the nature of

---

[6] These figures were obtained by extracting the data in each invoice entry related to the fee petition, assigning the data to a category and then adding the figures.

the activity or stage of the case. *See American Civil Liberties Union v. Barnes*, 168 F.3d. 423 (11th Cir. 1999) (well prepared fee petition includes a summary of the work activity by category).

Furthermore, it is unclear as to why preparation of the fee petition required over 40 hours of conference time. Although affidavits and declarations are important to the presentation of a fee petition, it would be giving counsel the benefit of the doubt to state that the preparation of any particular affidavit in support of a fee petition should not require more than two days of work. Mr. Moustakas expended far more than two days to prepare his declaration.

Given the above-described excesses, defendant submits that preparation of the fee petition should have been accomplished within 120 hours. Accordingly, defendant proposes that the amount awarded for preparation of the fee petition be reduced to $56,500.00

### D. The Fee Petition should be Reduced as a Result of Improper Block Billing on the Part of Plaintiff's Counsel

In the *Hensley* case, the Supreme Court made it clear that the party seeking to collect attorney's fees bears the burden of proving that the requested fee is reasonable by submitting evidence supporting the hours worked and rates claimed. *Hensley*, 461 U.S. at 433. Thus, the fee movant bears the burden of establishing the hours claimed and submitting adequate evidence to support this claim. *Id.* Our circuit has approached inadequately documented time requests in several ways. In cases where attorneys failed to submit contemporaneous time records, engaged in block billing, or included inadequately detailed descriptions, courts have reduced the fee award by a certain percentage, or disallowed some hours billed. *E.g.*, *Role Models, Inc. v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004

With respect to the issue block billing, in the case of *Jane L. v. Bangerter*, 61 F.3d 1505 (10th Cir. 1995), the Tenth Circuit upheld a 35 percent reduction of the plaintiff's requested

hours because the plaintiff's counsel listed "imprecise time records [which] failed to document adequately how plaintiff's attorneys utilized large blocks of time." *Id.* at 1510. Tasks included in these blocks of time included "unspecified or inadequately specified 'review' time, excessive travel time, unnecessary and duplicative time spent in conference calls, meetings, and hearings, noncompensable public relations time, noncompensable time expended after the judgement was rendered, and noncompensable clerical or 'overhead' time." *Id.*

Similarly, courts in this jurisdiction have disapproved of block billing and ordered significant cuts in the fee petition  For example, in *Role Models*  the court objected to records which lumped together multiple tasks.  The court gave one example of one entry that indicated that "on September 17 Role Model's lead lawyer spent 10.25 hours performing the following six tasks: 'Telecon[ference] with R. Alexander; conference with J. Port, K. Dodd, C. Bonat regarding research; review research; draft brief; review bankruptcy materials; revise brief.'" *Role Models* 353 F.3d at 971.  The court emphasized that "when an attorney bill[s] for more than one task in a day, the court is left to approximate the amount of time which should be allocated to each task.  With such inadequate descriptions the court cannot determine with a high degree of certainty, as it must, that the billings are reasonable." *Id.* *(citing In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (*per curiam*).  The court concluded that the time records submitted by the fee applicants failed to offer this high degree of certainty, specifically finding that this practice of block billing "made it impossible to evaluate their reasonableness." *Id.* at 970-71.  Due to inadequate documentation, and a number of other flaws including failure to justify the number of hours claimed, inconsistencies and improper billing entries, the court reduced the award by fifty percent. *Id.* at 973.

In this case, Mr. Heard's legal bills are replete with block billing. Most troubling – and most burdensome for the District of Columbia – is the fact that the attorneys with the highest billing rates, Paul Friedman and John Moustakas, are the most egregious violators of this standard. Attached hereto as Exhibit 4 is a chart delineating the block billing that has occurred in this case. All told, the block billing totals $295,094.25. Some highlights include:

| 08/03/04 | Friedman, Paul | 8.5 | 485.00 | 4,122.50 | Review first part of excel-based detailed chronology from St. Es records prepared by AJL; conf/w AJL re priorities for this task and on integrating St. Es info with court and jail info; conf/w JM re master chronology and bates stamping issues; draft and send letters to possible experts; review email; review separate skeletal chronology from AJL; legal research on DOJ consent decrees/orders re deaf accommodations and case law re undue burden and program disruption to determine what expert testimony may be required; Conf/w DMB re same. |
| --- | --- | --- | --- | --- | --- |
| 08/19/04 | Friedman, Paul | 9.50 | 485.00 | 4,607.50 | Make arrangements for evaluations of Mr. Heard; arrange with Sandra Hayes to get Heard to the airport for his trip to Washington and for Tom Stovall to meet him; edit motion for extension of time to file expert reports under rule 26; extended teleconf w/Dr. Vernon to discuss various aspects of his opinions; review draft report from Dr. Vernon and discuss report w/him; conf w/paralegal re scanning and |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | summarizing various records with attention to key issues. |
| 09/07/04 | Friedman, Paul | 6.50 | 485.00 | 3,152.50 | T/w Sandra Hayes, T. Stovall to confirm that Hurricane Frances did not prevent JH leaving Florida as scheduled to meet with consultant; multiple calls w/Gallaudet interpreter services to arrange for serving as interpreters for meeting of JH w/counsel during his evaluation visit; revise meeting schedule to accommodate interpreters and advise all concerned; conf/w Anne Lee re annotation of medical records in Paperport and spreadsheet analysis of St. Es records; t/w JM re logistics with previous counsel; review records post jail and St. Es records to prepare for meeting with Mr. Heard and consultant. |
| 09/08/04 | Moustakas, John | 7.00 | 420.00 | 2,940.00 | Review letter to Rezneck; meeting re: deposition dates; meeting w/T. Stovall; meeting w/interpreters; Meeting w/client and interpreters; Meeting; Work on tolling agreement brief. |
| 01/21/05 | Moustakas, John | 4.70 | 455.00 | 2,138.50 | Review correspondence file regarding length of time for examination of Mr. Heard; telephonic hearing with Court; call to Judge Kotelly's chambers with opposing counsel; telephone conference with District regarding dispute over terms and conditions of IME; drafting letter to opposing counsel; review written terms and conditions for IME; telephone conferences with Mr. |

| | | | | | Friedman; telephone conference with opposing counsel regarding timing of IME. |

These examples exemplify the difficulty the District faces. In the first example, Mr. Friedman bills eight tasks over 8.5 hours, at an average of 1.06 hours, and $515.31, per task. These tasks include discussions of bates-stamping, and reviewing chronologies and emails. It is impossible to tell whether any of these tasks were billed fairly due to the block billing. Similarly, with the second example, Mr. Friedman bills six tasks over 9.5 hours, at an average of 1.58 hours and $767.92 per task. The tasks for this day include ministerial phone calls and discussions about scanning documents. Mr. Moustakas's bills suffer similarly. In one of the above examples, Mr. Moustakas bills seven tasks over seven hours. These tasks include various meetings which do not indicate the subject matter, and, in one case, neither the subject nor the participants. These billing entries simply are woefully inadequate and not in compliance with legally recognized billing practices. The District of Columbia should not be required to compensate plaintiff's lawyers for tasks when it is impossible to discern the reasonableness of the time spent. Accordingly, the defendant requests that the court reduce the amount of requested fees by the amount that has been blocked billed.

### E. The Fee Petition is Replete with Vague Entries

**1. The description of many of the legal services provided is inadequate to determine the nature of the service and whether the service was actually necessary**

Courts require that time records submitted contain adequate detail and it goes without saying that documentation must adequately describe the legal work for which a client is being billed. *In re Sealed Case*, 890 F.2d 451, 455 (D.C. Cir. 1989) (*per curiam*). In *Sealed Case*, the

court reduced the award of attorney's fees due to insufficient specification of tasks.  *Id.*  The court noted that there were numerous instances of documentation that did not adequately describe the legal work for which the client was being billed.  *Id.*  For example, the court mentioned numerous instances in the records where the subject matter of a telephone call was not mentioned.  *Id.*  The court found that vague descriptions made it "impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task."  *Id.*  Although the court stated that this item could be denied in its entirety on this ground, it recognized that some telephone calls were necessary and merely reduced the amount requested.  *Id.*

Similarly, in *In re Meese*, 907 F.2d 1192 (D.C. Cir. 1990), the court reduced an award by ten percent because the time records maintained by the fee applicants were "replete with instances where no mention was made of the subject matter of a meeting, telephone conference or the work performed during hours billed."  *Id.* at 1204.

In the more recent case of *Role Models* discussed *supra,* the court also allowed the reduction of the award based upon lack of adequate detail in the time records.  *Role Models,* 353 F.3d at 971. One task description form complained of was an identical one-line entry, entered on eight consecutive days, stating "research and writing for appellate brief."  *Id.*  Another task description found inadequate was numerous entries in which attorneys billed simply for "research" and "writing," or for time spent in teleconferences or meetings—over one hundred in total—without providing any purposes.  *Id.*  The court stated that "such generic entries" were inadequate to meet a fee applicant's heavy obligation to present well-documented claims.  *Id.*  As indicated above, vague documentation, as well as a number of other flaws, resulted in the reduction of the award by fifty percent.  *Id.* at 973.

Here, as demonstrated in Exhibit 5, there are numerous examples of billing of meetings with no indication as to the substance or the participants, as well as letters and phone conversations with no indication of purpose or subject matter. As indicated in the comments section of the chart, there simply is no way for defendant to discern the nature of these charges. The District, therefore requests that the fee petition be reduced by an appropriate amount to reflect the noted deficiencies.

## 2. The Fee Petition Contains Numerous Internal "Meetings" Where All Participants Do Not Bill

A prerequisite to any successful claim is that detailed, task-specific records must be kept by counsel and other staff contemporaneously with the time expended. The time documentation "must be of sufficient detail and probative value to enable the court to determine *with a high degree of certainty* that such hours were actually and *reasonably expended." In Re Olson,* 884 F.2d 1415, 1428 (D.C. Cir. 1989), (emphasis added) (citations omitted . Properly documented time records are only the starting place for determining the hours reasonably expended and eligible for inclusion in the lodestar calculation. As previously discussed,counsel seeking a fee award must exercise billing judgment and exclude from their claim the hours which were not reasonably expended. *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980)(en banc).

In this case, as demonstrated in Exhibit 6, the billing records of plaintiff's counsels contain numerous references of an internal meeting with another member of the firm where the other member of the firm does not also document the meeting. Attorneys who have exercise billing judgment must specifically identify any hours that were excluded from a fee petition and indicate the tasks to which those hours were devoted. *Concerned Veterans,,* 675

F.2d at 1327-28, 1334-35; *Cook,* 609 F.Supp at1041. Counsel has attempted to demonstrate this billing judgment in their fee petition; therefore, there can be no excuse for the numerous entries of "internal meetings" of one. See Role Models 353 F.3d at 972 (entries of internal meetings of one is a defect warranting fee reduction).

The District also takes issue with the amount of internal meetings in general. Judge Charles R. Richey opined that it was improper for a defendant to "have to pay the double hourly rates for conferences between the senior and junior attorneys." *Parker v. Matthews*, 411 F. Supp. 1059, 1067 (D.D.C. 1976). The court concluded that a twenty percent across-the-board reduction of the fee award was apropriate to balance the "unexplained and apparently excessive time spent as well as for the overlapping of conference time between senior and junior attorneys." *Id.*

Similarly, in this case, not only is the District faced with numerous billing entries for "telephone conferences" with no indication as to the topic discussed, there was a great deal of internal meeting time overall. As already discussed, much of this meeting time is facially invalid, as there is a great deal of inconsistency among the timekeepers as to attendance at the meetings. However, in addition to receiving a reduction for billing related to internal meetings of one, the District submits it should not be double-billed for the meetings between senior counsel and the more junior attorneys and summer associates.

### 3. District Is Entitled To a Reduction In The Fee Petition For Excessive Billing For Ministerial And/Or Administrative Tasks

The District does not dispute that Plaintiff's counsel is entitled to compensation for legal services they provided to Plaintiff; however, those fees must be reasonable to the type of work performed. As courts have recognized, "[a] claim by a lawyer for maximum rates for

telephone calls with a client, legal research, a letter concerning a discovery request, the drafting of a brief, and trial time in court is neither fair nor reasonable." *Loughner v. University of Pittsburgh*, 260 F.3d 173, 180 (3rd Cir. 2001). This is because "[m]any of these tasks are effectively performed by administrative assistants, paralegals, or secretaries. As such, to claim the same high reimbursement rate for the wide range of tasks performed is unreasonable." *Id.*

Courts have found it "appropriate" when analyzing a fee petition, "to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics, and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Johnson v. Georgia Hwy Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974).

In this case, it is clear that Goodwin Proctor has plenty of clerical, secretarial, and paralegal assistance. Yet, for some reason, one of its highest timekeepers, Paul Friedman, has performed tasks such as the following:[7]

- 7/23/04: Research to locate Rebecca Troth (former DOJ OCR) and Bernie Arons (NIMH mental health expert) (left telephone voice mail messages re request for consultation) (2.3 hours, $1,131.67).

- 7/26/04: Research on legal organizations providing assistance in deaf cases (2.1 hours, $1030.65)

---

[7] The District has provided a complete breakdown of Mr. Friedman's bill at Exhibit 7. noted that most of the examples cited below are block billed, so the District has no idea how much time Mr. Friedman really spent on some of these non-legal tasks.

- 8/10/04: Research re facility for multi-disciplinary team assessment [presumably for Heard] (1.6 hours, $792.17)

- 8/3/04: Conf w/Moustakas re master chronology and bates stamping issues (1.1 hours, $515.31)

- 7/27/04: Telephone calls to schedule consultations (1.1 hours, $545.63)

- 7/30/04: Prepare spreadsheet on contacts with potential deafness experts (1.4 hours, $670.92)

- 8/9/04: Teleconf w/ Chud and S. Hayes (Heard's sister) re escorting Heard to DC for evaluation (1.6 hours, $751.75)

- 8/13/04: Telephone to Sandra Hayes re scheduling evaluation (1.3 hours, $646.67)

- 8/17/04: Send retainer to Dr. Vernon (1.9 hours, $939.69)

- 8/19/04: Arrange with Sandra Hayes to get Heard to the airport for his trip to Washington and for Tom Stovall to meet him (1.6 hours, $767.83)

- 9/2/04: User Paper Port to organize relevant documents into substantive categories (1.5 hours, $708.10)

- 9/7/04: T/w Sandra Hayes to confirm that Hurricane Francis did not prevent JH from leaving Florida as scheduled to meet with consultant (1.1 hours, $525.42)

- 9/7/04: Revise meeting schedule to accommodate interpreters and advise all concerned (1.1 hours, $525.42)

Rather than act as a lawyer, Mr. Friedman spent a great deal of time as a high-priced travel agent, event planner, and document manager. The District is at a loss as to why these tasks were not delegated to paralegals, secretaries, or – at the very least – individuals that did not

bill out at a senior partner rate. The District respectfully submits that it should only be required to compensate Mr. Friedman for the time he spent actually performing legal work.

### F. Plaintiff is not Entitled to Fees for Time Billed After February 4, 2005

Plaintiff is not entitled to attorney's fees for time expended after February 4, 2005, except for hours reasonably expended on the fee petition. On February 3, 2005, below-signed counsel caused to be served upon the law firm of Goodwin and Proctor an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. This offer was in the amount of $1,100,000.00 plus reasonable attorney's fees and other costs.

On February 16, 2005, John Moustakas, plaintiff's counsel, called below-signed counsel and requested that defendant hold open the offer of judgment, which would have expired on February 16th for an additional 10 days. See Declaration DeBerardinis. On behalf of the defendant, counsel agreed to this request with the proviso that if the offer of judgment was ultimately accepted plaintiff's petition for attorney's fees would not include time for services rendered after February 3, 2005. See Declaration DeBerardinis and attached e-mail.

Before February 16th Mr. Moustakas again contacted counsel requesting that the offer of judgment again be held open for several weeks. Once again counsel agreed to this request with the same proviso as to the cut off date as to attorney's fees. See Declaration DeBerardinis. This identical scenario repeated itself several more times between March and June. See Declaration DeBerardinis. In late May, Jonathan Stern, guardian *ad litem* for Mr. Heard, called counsel to personally request that the offer of judgment originally served in February continue to remain open. Counsel once again agreed with the same proviso that attorney's fees would be cut off as of February 3, 2005. See Declaration DeBerardinis

Finally in June of 2005 plaintiff agreed that he would agree to settle the case for $1,100,000 plus reasonable attorney's fees. Accordingly, as a matter of hornbook contract law there was an offer and acceptance to which plaintiff is now bound. Defendant, through an offer of judgment, agreed to a disposition of this case by compensating plaintiff in the amount of $1,100,000 plus reasonable attorney's fees. This offer was to expire on February 16th but in consideration of defendant leaving it open for many months, plaintiff agreed that his petition for attorney's fees would be cut off as of February 4, 2005. Accordingly, plaintiff is not entitled to fees after that date except for time reasonably spent on the fee petition.

## Defendant's Objections to Plaintiff's Requests for Costs

Defendant's objections to plaintiff's request for costs are listed below

## Page 157

1. Copier Charges $6,048.05
   Counsel seeks to charge the District 12 cents per page. Although some firms treat photocopying as a profit center, the cost passed onto the District should reflect the actual cost of the copies. 5 cents a page would compensate the firm for its actual costs, which comes to $2,545.45.

2. Fax Charges $1,156.00
   This figures represents a charge of $1.40 per page. Again counsel is seeking make a profit on faxes. 5 cents a page would more likely compensate plaintiff for actual costs, which comes to $36.00

3. Fees for professional services $1,957.75
   No identification of what the services involved or why they were necessary.

## Page 158

4. Psychological evaluation of Heard $10,516
   No hourly rate listed or who performed services

5. Assistance with Structured Settlement $1,875.00
   This amounts to financial advice for Mr. Heard (i.e in what form he should receive his $1.1 million dollar settlement and is not a part of litigation.

6. Services as psychological expert $568.75
   No identification of who provided the service or why it was necessary

7. Investigative Service 5/17/05 $1280
   No identification of who provided the service or why it was necessary

8. Copy fee 1/10/05 52.35
   Copies have been previously billed

## Page 166

9. Its Inc.  60.83
   No indication what this represents

10. Hotel P $446
    No indication what this represents

11. Cheryl Warner D.C. Jail $358.28
    No indication what this represents

12. Access Litigation Support $85.00
    No indication what this represents

13. D.C. Superior Court $210
    No indication what this represents

14. Corrections Consultant $1,000
    No indication what this represents

15. Document Printing $639.90
    No indication what this represents

16. Legal Research Other $8,144.48
    No indication what this represents.

## IV. CONCLUSION

Plaintiff has petitioned this court for an award of attorney's fees in the amount of $1,103,697 in a case that was resolved before the completion of discovery. From this amount the court should first deduct the amount of $141,600 which represents the amount requested by

Attorneys Stoval and Jones who are not entitled to a fee. The remaining amount of $962,097 should be reduced to $752,436.10 to reflect hourly rates as established in the Laffey Matrix. From this amount, the court should deduct $56,500 for excessive time billed on the fee petition, leaving $695,936. This amount should be reduced 50% to reflect deductions for block billing, vague entries, meetings of one, excessive meetings and ministerial time billed as lawyer time. The remaining $347,980 is the fee to which plaintiff is entitled. However, defendant has previously agreed that it would agree to a floor of $440,000 for attorney's fees which represents 40% of Mr. Heard's recovery and which protects him from paying for any of his legal fees. Accordingly, the court should award plaintiff $440,000 for attorney's fees and should reduce the expense request of Goodwin and Proctor as requested above.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia


GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

NICOLE L. LYNCH (#471953)
Chief, General Litigation II

\_\_\_\_\_/s/_____
SHANA L. FROST (#458021)
Assistant Attorney General, D.C.
441 Fourth Street NW, Sixth Floor South
Washington, D.C. 20001
Telephone: (202) 724-6534
Facsimile: (202) 727-3625

_____/s/_____

ROBERT A. DeBERARDINIS, JR. (335976)
Assistant Attorney General, D.C.
441 Fourth Street NW, Sixth Floor South
Washington, D.C. 20001
Telephone: (202) 724-6602
Facsimile: (202) 727-3625
Email: robert.deberardinis@dc.gov
Attorney for Defendants