UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
JOSEPH S. HEARD,                          )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )      Civil Action No. 02-296 (CKK/AK)
                                          )
DISTRICT OF COLUMBIA                      )
GOVERNMENT, *et al.*                      )
                                          )
            Defendants.                   )
_____          )

## REPORT AND RECOMMENDATION

Pursuant to an Order [170], dated January 11, 2006, the above-captioned case was

referred to the undersigned, for a Report and Recommendation on Plaintiff's Motion for an

Award of Attorneys' Fees and Costs Pursuant to Fed. R. Civ. P. 54(d) [145-1] ("Motion" or "Fee

Petition").   Plaintiff seeks legal fees in the amount of $1,103,697, and costs in the amount of

$71,013.36.   Defendant District of Columbia contests the amount of fees and costs claimed by

Plaintiff and suggests that fees be reduced to $440,000, and that reimbursement of certain costs,

discussed herein, be denied.

## I. Background

_____On November 15, 1998, Plaintiff Joseph Heard (hereinafter "Plaintiff" or "Heard") was

arrested and charged with unlawful entry at the George Washington University in the District of

Columbia.  First Amended Complaint [43] at ¶12.  On June 7, 1999,  Heard was committed to St.

Elizabeth's Hospital because of concerns over his mental competency.  On October 13, 1999, the

District of Columbia Superior Court ordered Plaintiff's  release from custody because the

criminal charge against him had been dropped.  *Id.* at ¶13.   Plaintiff was instead sent to the

District of Columbia Central Detention Facility where he spent the following 22 months

incarcerated.  *Id.* at ¶17.

 The underlying civil action, which was filed in 2002, contained 11 counts, including

claims brought under the Civil Rights Act , 42 U.S.C.A §1983, and claims of unlawful

discrimination in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §12131,

*et seq.* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, *et seq.*

("Rehabilitation Act").  On September 29, 2003, the trial court dismissed 8 of the original 11

counts of the Complaint, leaving intact the three aforementioned claims.  *See* Order [20].

Plaintiff was represented by W. Thomas Stovall, II, and Othello G. Jones, Jr. from the

inception of his civil action, in February, 2002, through December 31, 2003, when John

Moustakas ("Moustakas"), Michele Roberts ("Roberts") and Adam Chud ("Chud") of Shea &

Gardner entered an appearance for the Plaintiff.  *See* Notice of Appearance [30].[1]  Paul Friedman

("Friedman") of Shea & Gardner subsequently  entered his appearance in this matter on July 30,

2004.  *See* Notice [52].[2]

During 2004 through February 2005, Plaintiff litigated his Section 1983, ADA and

Rehabilitation Act claims.  The Court's docket sheet indicates that Plaintiff's counsel amended

the Complaint and commenced discovery.  The trial court appointed a guardian *ad litem* for

---

[1]Mr. Stovall made a motion to withdraw, which the trial court granted on February 19, 2004.  There is no docket entry reflecting Mr. Jones' formal withdrawal from the case.  Roberts' time has been excluded from the Fee Petition.

[2]On October 4, 2004, Plaintiffs' counsel filed a Notice of Change of Firm Name [82], indicating that counsel were now affiliated with Goodwin Procter L.L.P.

Plaintiff and the parties engaged in mediation efforts.  Both sides named experts, though Defendant District of Columbia indicates that none were deposed.  Plaintiff was also evaluated by medical experts retained by both sides.  *See* Opposition at 2.

On February 3, 2005, Defendant District of Columbia (hereinafter the "Defendant" or the "District") made an offer of judgment to settle the case.  *See* Notice of Service of Offer of Judgment by Defendant District of Columbia [128].  The Offer of Judgment was not accepted by the Plaintiff but instead, the parties continued to prosecute the case while negotiating a settlement.[3]  On June 16, 2005, the Plaintiff filed a Stipulation for Entry of Consent Judgment [139] and a motion to file the settlement agreement under seal [140].[4]  On August 4, 2005, the trial court entered a Consent Judgment [147] in the amount of $1.1 million, plus reasonable costs including reasonable attorneys' fees.[5]

On August 4, 2005, Plaintiff filed the instant Motion [145], a memorandum in support thereof ("Memorandum"), declarations in support of counsel's billing rates, billing records, and other documentary support for fees and costs claimed.  Defendant filed an opposition to the Motion ("Opposition") [168], and Plaintiff filed his reply to the Opposition ("Reply") [173].

---

[3]The docket entries reflect that, on February 14, 2005,  Defendant District of Columbia moved to stay discovery and the trial court granted that motion with regard to Defendant's motion to compel but denied it  with regard to Plaintiff's motion to compel.  For the period from February 3, 2005 through April 19, 2005, when Plaintiff filed a Notice of Settlement Status, no other activity by Plaintiff [involving the District] is reflected on the docket.

[4]This motion was later withdrawn.

[5]The Stipulation for Entry of Consent Judgment and the Consent Judgment apply only to Defendant District of Columbia, as opposed to all of the defendants in this matter.

## II. Legal Standard for Recovery of Fees

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988 provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court in its discretion may allow the prevailing party . . . a reasonable attorney's fee as part of the costs. . . . [6]

The terms of this statute expressly empower a district court to exercise its discretion in determining an appropriate fee award. *See generally Covington v. District of Columbia*, 57 F.3d 1101 (D.C. Cir. 1995); *Sherrock v. Harris,* 489 F. Supp. 913 (S.D. N.Y. 1980); *Vanguard Justice Soc., Inc. v. Hughes*, 471 F. Supp. 670 (D. Md. 1979).

As a preliminary matter, the plaintiff must be a "prevailing party" to recover an attorney's fee under Section 1988 above. *Hensley v. Eckerhart*, 461 U.S. 424 (1983).  To qualify as a prevailing party, a plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).

Fed. R. Civ. P. 54(d)(2) provides for prompt resolution of matters raised in connection with a fee petition.  Once a party is considered a prevailing party, the court must determine the reasonable amount of attorneys' fees by multiplying the reasonable number of hours expended in the case by the reasonable hourly rate for each lawyer and paralegal. *See Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Covington v. District of Columbia*, 57 F.3d at 1107 (D.C. Cir. 1995).  A reasonable fee is one that is "adequate to attract competent counsel, but which does not produce windfalls to attorneys." *Blum*, 465 U.S. at 893-94 (internal quotation omitted).  Counsel must demonstrate that they exercised "billing judgment." *See Hensley*, 461 U.S. at 434 ("Counsel for

---

[6]The Americans with Disabilities Act contains a similar provision.

the prevailing party should make a good faith effort to exclude from a request hours that are excessive, redundant or otherwise unnecessary, . . .") (quotations omitted).

Plaintiff bears the burden of establishing all requisite elements of the claimed fee award, including entitlement to an award, the documentation of appropriate hours and justification of the reasonableness of their rates.  *See* 42 U.S.C. §1988(b); *Blum*, 465 U.S. at 896 n.11;  *Hensley*, 461 U.S. at 437.  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed [and] [w]here the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley*, 461 U.S. at 433.  The burdens of both production and persuasion relating to the reasonableness of the amount of hours billed rests upon the claimant.  *American Petroleum Institute v. EPA*, 72 F.3d 907, 915 (D.C. Cir. 1996); *Covington*, 57 F.3d at 1109.

### III. <u>Analysis</u>

Plaintiff contends that he is both eligible for and entitled to attorneys' fees.  Defendant does not challenge Plaintiff's eligibility for recovery of attorney's fees but the District does challenge the amount of fees claimed.  Thus, the undersigned must analyze Plaintiff's entitlement to a recovery of reasonable attorneys' fees.  The issue of reimbursable costs will be addressed separately.

### A. <u>Entitlement to Attorneys' Fees</u>
#### 1. <u>Hourly Rates</u>

The breakdown of fees among the lawyers representing Plaintiff is as follows: Goodwin Procter, LLP ("Goodwin Procter") - $962,097 [reflecting 2,765.7 hours of time billed on this case]; W. Thomas Stovall, II - $61,200 [306 hours]; and Othello G. Jones, Jr. - $80,400 [402

hours].  Mr. Stovall ("Stovall") and Mr. Jones ("Jones") billed at an hourly rate of $200.00.  *See*

Motion, Exhibits E and F (Affidavits by Stovall and Jones).  The hourly billing rates for the lead

Goodwin Procter attorneys were as follows: Moustakas $390-455; Friedman $485-510; and Chud

$285-325.  *See* Motion, Exhibit D (Declaration of John D. Aldock ("Aldock"), Managing Partner

of Goodwin Procter's Washington, D.C. office).[7]  Defendant contests the hourly rates employed

by Goodwin Procter's attorneys as well as the time billed for certain tasks, and further, they

oppose any award of fees to attorneys  Jones and Stovall.

### a. Goodwin Procter

In determining reasonable hourly billing rates, the District of Columbia Circuit has

adopted an approach involving consideration of three factors: "the attorney's billing practices; the

attorneys' skill, experience and reputation; and the prevailing market rates in the relevant

community."  *Covington*, 57 F.3d at 1107.  For attorneys in private practice, this first factor is

particularly significant, and billing practices may be contested where the prevailing attorneys

request rates in excess of what they normally charge.  *See, e.g., Save Our Cumberland*

*Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1521, 1524 (D.C. Cir. 1988) (*en banc*) (hereinafter

referred to as "SOCM"); *Covington*, 57 F.3d at 1107.   In the instant case,  Aldock's Declaration

sets forth the customary billing rates for the Goodwin Procter attorneys and staff who worked on

his case, indicating that these were the rates charged to Plaintiff.  *See* Motion, Exhibit D ("Aldock

Declaration").

---

[7] In addition to the three lead counsel who worked on this case, the following Goodwin
Procter employees also worked on this case and billed on an hourly basis as follows: Associates
Susan Burkhardt and David Booth - $245.00; Associates Matt Wilshire and Daniel Hanks -
$225.00; Law Clerks Christopher Fregiato, J. Baird, Matthew Hanchey, Sarah Grisworld, Soyong
Cho - $170.00; and Paralegal Anne Lee - $120.00.

Defendant does not *per se* challenge the customary billing rates employed by Goodwin Procter counsel but rather, the District challenges the amount of time that counsel spent on certain activities [such as preparation of the Fee Petition], the use of block billing, the adequacy of the description accompanying some fee entries, and fees billed for work post-dating the Offer of Judgment.  These issues will be addressed in connection with the undersigned's analysis of the amount of time billed by counsel as opposed to the hourly rates employed.  The undersigned finds that Plaintiff has met his burden in demonstrating that Goodwin Procter attorneys charged at their customary billing rates in this case.

The second factor to consider in determining hourly rates is the skill, experience, and reputation of counsel.  *Blum*, 465 U.S. at 896 n.11; *SOCM,* 857 F.2d at 1524.   Plaintiff indicates that "the skills, experience, and reputations of plaintiff's attorneys are documented in the attached Declarations of Messrs. Moustakas, [and] Aldock, . . . .."  Memorandum at 3, referencing Motion Exhibits C and D.[8]  Defendant does not challenge the quality of legal services performed but does note that Mr. Moustakas' experience was primarily criminal as opposed to civil and further, that Plaintiff fails to provide specifics regarding Mr. Chud's civil rights litigation experience.

---

[8]Aldock's Declaration details, in a concise manner, the skills, experience and reputation of Goodwin Procter counsel with regard to federal litigation practice.  *See* Motion, Exhibit D.  In contrast, the Moustakas Declaration, *see* Motion, Exhibit C, is an excruciatingly detailed summary of the work that was performed in this matter, which does not aid in establishing any of the three factors relevant to an hourly rate inquiry.  In fact, the preparation of this type of lengthy summary supports the Defendant's allegation that the amount of time counsel spent preparing the Fee Petition was excessive, and it is contrary to the Supreme Court's statement that "[a] request for attorney's fees should not result in a second major litigation."  *Covington*, 57 F.3d at 1107 (quoting  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).)

Opposition at 10.[9]   Reviewing the qualifications of counsel set forth in the Aldock Declaration, the undersigned finds that Plaintiff has demonstrated that counsel were skilled, experienced, and enjoyed a good reputation.

The final factor relates to evidence of prevailing market rates in the legal community, which can be established through declarations of attorneys and market surveys.  *See Covington*, 57 F.3d at 1109.  Plaintiff's counsel includes Declarations from three members of the D.C. bar, who are affiliated with highly regarded law firms, in order to establish the market rate for legal services involving "complex civil litigation" within the District of Columbia area.  *See* Motion Exhibits G, H, and I (Declarations of John Payton of Wilmer, Cutler, Pickering, Hale and Dorr, LLP; James J. Sandman of Arnold & Porter, LLP, and Anthony Herman of Covington & Burling, respectively.) *See also* Motion, Exhibits J and K (market surveys reflecting billing rates for the years 2004-2005 in the District of Columbia market.)  According to the Aldock Declaration, the billing rates for Goodwin Procter attorneys are in line or lower than the billing rates of attorneys at comparable District of Columbia law firms.

The District of Columbia objects to the evidence of market rates proffered by Plaintiff, on grounds that "Plaintiff's fee petition attempts to establish a market rate for what it terms 'complex federal litigation,'" Opposition at 9, when counsel should have established a market rate which "includ[ed] information as to hourly fees that have been claimed in §1983 cases."  *Id.*, citing *Kattan v. District of Columbia*, 995 F.2d 274 (D.C. Cir. 1993).  In *Kattan*, the prevailing plaintiff brought suit under the Education for All Handicapped Children Act, and he appealed the trial

---

[9]Furthermore, Defendant notes that many of the tasks performed by Mr. Friedman in this matter do not warrant his "premium billing rate."  Opposition at 10.  That issue will be addressed in Section III B.2.b. 4. of this Report and Recommendation.

court's reduction of fees claimed in his fee petition.  The Court of Appeals affirmed the

reduction, noting that the setting of an appropriate hourly rate was based in part on "reports of

similar cases in which fees were awarded for comparable work." *Kattan*, 995 F.2d at 278.  *See*

*also SOCM*, 857 F.2d at 1521 (fee awards should compensate attorneys at rates commensurate

with attorneys doing the same sort of work in the same area.)

Defendant also relies upon *Buffington v. Baltimore County, Md.*, 913 F.2d 113, 129-130

(4th Cir. 1990).  In *Buffington*, a prevailing party in a §1983 case provided the trial court with

information about the market rate that its attorneys and other attorneys in the locality charged for

federal civil litigation, but the Court of Appeals held that plaintiff needed to provide more specific

information pertaining to rates charged and approved in §1983 cases.  The Court of Appeals in

that case noted that the record suggested the likelihood that "an inordinate amount of legal

research effort was necessitated by these undoubtedly fine lawyers' lack of specific experience in

this field." *Id.* at 130. [10]

---

[10]Defendant argues that the hourly rate used by Goodwin Procter attorneys and staff should be reduced to mirror the rates of the Laffey Matrix because Plaintiff has failed to establish the market rate for civil rights litigation and this matrix reflects prevailing community rates for attorneys with exceptional experience, expertise and reputation.  Opposition at 11 & n.4. Plaintiff responds by directing the trial court's attention to the "updated *Laffey* index prepared by Dr. Michael Kavanaugh and submitted as Exhibit U to [the] Reply, rather than the alternative USAO matrix proffered by Defendant."  Reply at 13.  Plaintiff explains that this Court has adopted the updated *Laffey* Matrix "as the correct current measure of prevailing market rates in the market for complex federal litigation." *Id.*, citing *Salazar v. District of Columbia*, 123 F. Supp.2d 8, 14 (D.D.C. 2000); *Muldrow v. Re-Direct, Inc.,* 2005 U.S. Dist. LEXIS 25322 at *6 n.3 (D.D.C. Oct. 27, 2005); *Brown v. Barnhart*, 2005 U.S. Dist. LEXIS 23212 at *2 (D.D.C. Oct. 12, 2005).  Plaintiff further notes that if these [updated] *Laffey* Matrix rates are applied, "the Fee Petition would be decreased by only $5,688.80 for the 218.8 of Mr. Chud's hours that exceeded the index rate by $26/hour. (No other rates did.)" Reply at 14.  In *Covington*, the Circuit Court determined that matrices like the *Laffey* Matrix "provide a useful starting point," but they are "crude." 57 F.3d at 1109.

Plaintiff rebuts Defendant's contention that there is a material difference between the market for civil rights litigation and the market for complex federal litigation for purposes of awarding fees under §1988.  Plaintiff cites from the Congressional history behind the enactment of civil rights legislation, indicating that "the amount of fees awarded under [§1988] be governed by the same standards which prevail in other types of equally complex federal litigation, . . . ." Reply at 11, citing S. Rep. No. 94-1011, 94th Conf., 2d Sess. 6 (1976); *City of Riverside v. Rivera*, 477 U.S. 571, 575 (1986); *Blum*, 465 U.S. at 893.  *See also Covington v. District of Columbia*, 57 F.3d at 1106, 1111 ( where this Circuit held that there is no difference between civil rights litigation and other complex federal litigation in terms of establishing hours rates for attorneys.) In *Covington*, the District of Columbia's attempt to define a sub-market of plaintiff attorneys who handle civil rights [and employment discrimination] cases, and who bill at lower rates than attorneys who practice complex federal litigation was rejected by the  Court of Appeals. Following *Covington* and taking into account the affidavits and market surveys proffered by Plaintiff, the undersigned finds that Plaintiff has established the prevailing market rates in the community with regard to civil rights litigation, which is treated the same as other complex federal litigation.  Plaintiff has thus met its burden in establishing that the rates employed by Goodwin Procter counsel are "reasonable hourly rates."

The undersigned recommends that the trial court accept these hourly billing rates for the Goodwin Procter attorneys, with the proviso that these hourly rates attach to work performed in furtherance of  "complex federal litigation."   Accordingly, the undersigned will examine in detail the tasks performed by counsel and will adjust the amount of time billed, to account for the fact that lower billing rates should be applied when the tasks performed could be handled by more

-10-

junior counsel or legal staff.[11]   "[A] court must not permit an attorney to recover his 'standard hourly rate . .. for performing tasks appropriate to either a less experienced lawyer or secretary or paralegal.'"  *Mogilevsky v. Bally Total Fitness Corp.*, 311 F. Supp.2d 212, 217-18 (D. Mass. 2004) (quoting  *McMillan*, 140 F. 3d at 308).

### b. Stovall and Jones

Attorneys Stovall and Jones submitted Affidavits in Support of Attorney's Fees [attached to Motion, at Exhibits E and F] but these Affidavits are not accompanied by any time records or description of the work performed.[12]  Both counsel billed at an hourly rate of $200.00, which they certify as their usual billing rate.  *See* Exhibits E and F.   The District of Columbia, in its Opposition, does not address the hourly rates employed by Stovall and Jones, and thus, the undersigned recommends that the hourly rates for Jones and Stovall be accepted by the trial court.

### B. Hours Incurred by Counsel
### 1. Stovall and Jones

Stovall estimates that he spent 306 hours litigating Plaintiff's case.  His estimate is based on his page-by-page review of all hard-copy records, held at his office.  *See* Stovall Affidavit at ¶15.  Jones estimates that his total hours expended on this matter equal 402, based on his review of his records.  *See* Jones Affidavit at ¶¶7-8.   Defendant argues that Messrs. Stovall and Jones are

---

[11]It should be noted that this "complex federal litigation" never proceeded beyond the discovery stage before the parties entered into a settlement.

[12]Jones' Affidavit gives a breakdown of hours spent on this matter as follows: "a. Conferences, interviews 60 hours, b. Investigation, legal research, review of documents, local and Federal Laws research, analysis, and preparation of documents 162 hours; c. Review of Government documents 60 hours; and d. Reviewed researched and responded to Government Motions 120 hours."  Jones Affidavit, ¶7.  Stovall provides no breakdown of hours.  The undersigned notes that the Court's docket sheet does give some very basic guidance as to the tasks performed by Stovall and Jones.

not entitled to any award of attorneys fees even though there is no dispute that they served as

counsel for the Plaintiff for the period August 16, 2001 through December 31, 2003.[13]   The

District asserts that neither attorney has provided contemporaneous time records as required in

this jurisdiction.  *See In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989) ("[F]ee applications

[should] include contemporaneous time records of hours worked and rates claimed, plus a detailed

description of the subject matter of the work with supporting documents, if any.")  *See also*

*National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1326 (D.C.

Cir. 1982) ("Casual after-the-fact estimates of time expended on a case are insufficient to support

an award of attorneys' fees.  Attorneys who anticipate making a fee application must maintain

contemporaneous, complete and standardized time records which accurately reflect the work

done. . . .")

Stovall indicates that on or about May 5, 2004, his office computers "became infected with

an extreme virus, which erased all information" and these computers were subsequently

discarded.  Stovall Affidavit at ¶¶12-13. Stovall indicates that he performed a page-by-page

review of hard-copy records, in connection with preparation of his Affidavit.  *Id.* at ¶15.  Notably,

none of these records were submitted or reconstructed for submission with the Fee Petition.  Jones

---

[13]Defendant assumes that these counsel were terminated "because they lacked the skills to litigate Mr. Heard's claim." Opposition at 6.  Defendant's assumption is based upon statements by Goodwin Procter counsel such as the following: Counsel "enter[ed] the case after jarring dismissals left only a small fraction of Mr. Heard's claims (and even those hanging by a thread), there was much work to be done to reconceptualize Mr. Heard's civil rights claims . . . , and to resurrect his dismissed common law claims not only against a new series of individuals and CCHPS, but also against the District itself."  Reply at 4-5.  Goodwin Procter counsel clarifies in its Reply that Plaintiff's former counsel were not fired but rather they "concluded that new counsel with better resources and more relevant trial experience . . . would better serve Mr. Heard's needs."  Reply at 47-48.

proffers no explanation for his failure to provide the trial court with contemporaneous time records.

Defendant alleges that "attorneys Stovall and Jones have done an abysmal job of submitting [any] evidence in support of their fee request," Opposition at 6, and Defendant accordingly concludes that these attorneys fail to bear "the[ir] burden of establishing all requisite elements of the claimed fee award, including entitlement to an award, the documentation of appropriate hours and justification of the reasonableness of their rates."  Opposition at 4, citing 42 U.S.C. §1988(b); *Blum*, 465 U.S. at 896 n.11; *Hensley*, 461 U.S. at 437.  Defendant acknowledges that in *State of New York v. Microsoft*, 297 F. Supp.2d 15 (D.D.C. 2003), the court found complete denial of attorney's fees for failure to maintain contemporaneous time records to be a harsh sanction.  Opposition at 7.  In that case however, the fee petitioner made a concerted effort to reconstruct its records and to provide sufficient information from which the court could evaluate the claim and be confident that the time requested was reasonably expended.  *Id.* at 38.  That is contrary to the fee applications submitted by Messrs. Stovall and Jones where the only indication of tangible work performed by these counsel may be derived from the entries on the Court's docket sheet, indicating the documents that were filed with the Court, because neither counsel submitted any fee records.

Balancing this Circuit's requirement that attorneys present contemporaneous time records with the acknowledgment that Stovall and Jones represented Plaintiff for a period of two years and four months [although they admittedly had mixed success in advancing the Plaintiff's case] and also taking into account Stovall's representation that computerized billing records no longer exist, the undersigned recommends that Stovall and Jones each be awarded 1/4 of the fees they

have claimed.

## 2. Goodwin Procter Attorneys

Defendant contests the amount of time billed by Goodwin Procter counsel on a number of grounds: 1) the amount claimed in connection with preparation of the Fee Petition is excessive; 2) counsel improperly employed block billing;  3) the attorneys' fee records in the Fee Petition contain vague entries regarding the legal services performed; 4) the attorneys' fee records in the Fee Petition contain entries for internal meetings, where all participants did not bill; 5) Plaintiff requests reimbursement for counsel's performance of excessive ministerial or administrative tasks; and 6) fees for work performed after the Offer of Judgment was made should be disallowed.

The Supreme Court has recognized that hours may be excluded from the lodestar calculation on grounds that certain hours were: 1) spent on unsuccessful and segregable claims; 2) excessive; 3) redundant; or 4) otherwise unnecessary.  *Hensley*, 461 U.S. at 434.

### a. Fees for Preparation of the Fee Petition

Addressing issue one above, Defendant "concedes that Plaintiff is entitled to fees for hours reasonably expended in the preparation of the fee petition [but] [D]efendant takes exception to the number of hours and amount billed by [P]laintiff for the fee petition."  Opposition at 12.  *See Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521, 528 (D.C. Cir. 1985) (The "matter is well settled in this circuit [that] [h]ours reasonably devoted to a request for fees are compensable.")  Defendant calculates that the amount of fees charged to Fee Petition preparation totals  $123,909.50.  Plaintiff asserts that this number totals "only $96,196.00 " with such figure reflecting "the number of hours actually spent preparing the fee petition and its attachments."  Reply at 45.  Even proceeding from acceptance of Plaintiff's assertion, the undersigned is

astonished at the amount of fees incurred in connection with the preparation of Plaintiff's Fee

Petition.[14]  *See Farris v. Cox*, 508 F. Supp. 222, 226 (N.D.Cal. 1981) (Courts have an "obligation

to scrutinize the hours spent preparing the fee petitions to insure that the total is reasonable and

that it does not represent a windfall for the attorneys.")  Plaintiff suggests that  "expenditures on

the Fee Petition - like the litigation itself - were a function of the complexities of the case and the

issues raised." Reply at 46.  Fee litigation is however by no means equivalent to complex federal

litigation nor does it entail specialized expertise and experience.[15]  Although the facts of this

litigation were particular, the structure of the motion for attorneys' fees was largely boilerplate.

Plaintiff further glibly assumes that because the ratio of fees sought for work on the Fee

Petition constitutes only 8.7% of all fees sought, this fact in and of itself lends credibility to

counsel's request for fees on fees.  In support of this proposition, Plaintiff cites the *Microsoft* case,

297 F. Supp. 2d at 49, where this Court made an award of fees for work on the fee petition, which

represented 12.4% of plaintiff's total fees.  The undersigned finds preposterous Plaintiff's

contention that this matter is equivalent in complexity to the *Microsoft* litigation.  While the

_____

[14]In the instant case, Plaintiff indicates that, in an effort to resolve this case, it provided a copy of its billing records to Defendant on March 1, 2005, where such records "captured fees and costs through February 3, 2005." Reply at 1, n 2.  A "slightly updated version" was subsequently provided to Defendant on May 20, 2005.  *Id.*  Counsel's actions in March and May 2005 should have expedited preparation of the final Fee Petition in August 2005, in a case such as this where Plaintiff's eligibility for fees is not contested but rather it is simply a matter of demonstrating the reasonableness of such fees, and culling through the fee records is the most labor intensive part of preparing the Fee Petition.  The undersigned is therefore surprised to discover that the preparation of this Fee Petition resulted in numerous time entries, spanning an eight week period in June and July of 2005, involving multiple attorneys.   Much of the time spent during this period is attributable to preparation of the Moustakas Declaration.

[15]*See generally Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *affirmed in part and reversed in part,* 746 F.2d 4 (D.C. Cir. 1984).

factual circumstances of this case [involving a Plaintiff who was not able to assist counsel and numerous changes in Defendant's counsel] may have necessitated the expenditure of additional time on some tasks, the instant case involved claims under the ADA, the Rehabilitation Act, and the Civil Rights Act, areas of law that are well-defined, and notably, the case did not proceed beyond the discovery stage into trial nor did the parties file dispositive motions or for that matter, conclude expert discovery.

Defendant asserts that the fees billed in connection with preparation of this Fee Petition are excessive in light of the fact that the analysis and discussion contained in the Fee Petition are in no way complex, and the petition itself is only ten pages long. Plaintiffs explain that their "[fee petition] brief could be short only because of the highly-detailed and carefully-prepared declarations and accompanying materials that were drafted to support it." Reply at 43. The undersigned notes that at least one of these "highly detailed" supporting documents, a 29-page Declaration by Mr. Moustakas, was excessive, redundant and otherwise unnecessary in light of the fact that counsel submitted detailed billing records with the Fee Petition.[16] Such excessive

---

[16]The undersigned conservatively estimates that at least $18,500.00 in legal fees is directly attributable to preparation of the Moustakas Declaration, which is attached as Motion, Exhibit C. This amount only includes billing entries that specifically mention the Moustakas Declaration, recognizing that numerous billing entries contain the generic term "work on fee petition," which could indicate the 10-page Fee Petition or any of the multiple attachments thereto. The Moustakas Declaration attempts to enumerate every action that was taken by Plaintiff's counsel in the course of litigating this matter. For example, the Declaration provides a litany of entries as follows: "36. Review all documents produced in discovery.; 37. Create and organize a searchable litigation database of records produced or otherwise obtained by plaintiff for efficient document review and subsequent use in preparation for trial; 38. Meet and confer with District on its responses to plaintiff's discovery requests, including by letter and face-to-face meetings . . . ." Motion, Exhibit C at 5. The list continues *ad nauseum* and while the undersigned appreciates the zealousness of counsel, this Court is well-acquainted with fee litigation and finds that the submission of such Declaration adds little value in light of the fact that counsel's time records reflect more detailed descriptions of the same activity.

documentation also violates the Supreme Court's ruling on fee litigation whereby it determined

that  "[a] request for attorney's fees should not result in a second major litigation."  *Hensley*, 461

U.S. at 437.  Plaintiff's Reply and the attached Exhibits total approximately 441 pages, lacking

any index of the multiple exhibits.[17]   The "central responsibility" of a court in computing an

---

Furthermore, the Moustakas Declaration contains both unnecessary legal argument and unwarranted editorial commentary.  In one section, counsel attempts to summarize the "Legal Complexities" encountered in litigating this matter; e.g., "the District alleged that absolute or qualified immunity barred the action.  In addition, citing a number of cases in support, the District asserted that the court-appointed medical receiver responsible for medical treatment at the jail was entitled (along with his entire staff) to absolute judicial immunity, . . . ."  Moustakas Declaration at ¶155.  The Declaration further notes that "[t]he District also asserted Mr. Heard's contributory negligence" and "claimed that Mr. Heard's claims for compensatory damages were duplicative and redundant and that his claims for punitive damages against the individual defendants were unsupportable."  *Id.* at ¶¶156-157.  Defenses involving qualified immunity and contributory negligence are  typical legal defenses asserted by many defendants.

Moreover, the Affidavit goes so far as to proffer an albeit interesting but dubious "theory" regarding one factor that "enhanced" the complexity of the litigation, as follows:
> [I]t is noteworthy that the District assigned Daniel Rezneck - one of the most distinguished practicing lawyers in the area - to serve as its lead counsel in defending Mr. Heard's lawsuit.  His selection was telling evidence that the District intended to litigate the case aggressively in an effort to contain it and, if possible, eviscerate it.  A graduate of the Harvard Law School, Mr. Rezneck clerked for Justice Brennan, was a partner for decades at the Arnold & Porter law firm, was elected as President of the D.C. Bar, and served as General Counsel to the D.C. Financial Control Board.  Before we entered our appearance, Mr. Rezneck had already succeeded in drastically truncating Mr. Heard's case and had almost succeeded in having it dismissed in its entirety.  Through skillful strategic maneuvers and objections to discovery, he sought to further pare down any claims that remained standing.  Litigating against such a formidable adversary required constant vigilance and intellectual energy, making the prosecution of Mr. Heard's claims all the more challenging.

Exhibit C at 16, ¶159.  The Court cannot speculate whether Plaintiff is suggesting that the trial court examine and weigh opposing counsel's lawyering skills as a factor to be considered in measuring a party's request for fees.

---

[17]Although the time counsel spent replying to the opposition to the Fee Petition is not included, the Reply and its exhibits exemplify the manner in which counsel excessively litigated

award of attorney's fees is to "make the assessment of what is a reasonable fee under the circumstances of the case." *Farrar v. Hobby*, 506 U.S. at 115  (quotations omitted).  Examining the petition itself, and the attachments and declaration submitted in connection with the petition, and the billing records reflecting preparation of the Fee Petition, the undersigned concludes that Plaintiff's counsel was overzealous in their preparation of the Fee Petition and accordingly, it is recommended that fees related to preparation of the Fee Petition be adjusted downward.

### b. <u>Examining the Attorneys' Fee Records in the Fee Petition</u>

### 1. <u>Block Billing</u>

The District argues that the attorneys' fees reflected in the Fee Petition should be reduced because of a number of deficiencies in the way in which Plaintiff's counsel billed for their time, including improper block billing.  "When an attorney submits a block entry 'the court is left to approximate the amount of time which should be allocated to each task'" and the documentation is therefore considered "inadequate."  *In Re Olson*, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989); *accord Role Models American, Inc. v. Brownlee*, 353 F.3d 962, 970-71 (D.C. Cir. 2004).  In this Circuit, documentation is regarded as inadequate when insufficient to resolve disputed questions about what work was actually done.  *See Kennecott Corporation v. EPA*, 804 F.2d 763 (D.C. Cir. 1986) (*per curiam*) (wherein the Court of Appeals held that petitioners were entitled to attorneys' fees but concluded that the amount must be reduced in light of the poor documentation and the petitioner's lack of success on one issue.)

---

this matter.  *See, e.g.,* Supplemental Declaration of John Moustakas (12 pages), Declaration of Adam Chud (9 pages) and Declaration of Paul Friedman (14 pages), which, in part, reiterate points raised in the Exhibits to the Motion and the 52 page Reply.

Plaintiff acknowledges that "in entries amounting to about 30% of the legal fees incurred (or about $295,000) the time spent on Mr. Heard's case was contemporaneously recorded by counsel, and presented in Mr. Heard's Fee Petition, in block-billed form." Reply at 16.   Plaintiff, however, cures these deficiencies by means of the Chart attached to its Reply, as Exhibit Z, which provides allotted time for each task within the block billing entries.[18]   Accordingly, the undersigned recommends no reduction in fees attributable to block billing.

## 2. Allegations of Vague Billing Entries

Defendant asserts that "[t]he description of legal services provided is inadequate to determine the nature of the service and whether the service was actually necessary." Opposition at 17.   *See In re Sealed Case*, 890 F.2d 451, 455 (D.C. Cir. 1989) (*per curiam*) (wherein the Court of Appeals noted numerous instances of documentation that failed to adequately describe the legal work for which the client was billed, such as entries for telephone calls where the subject matter of the call was not noted.); *In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990) (reducing an attorneys' fee award by 10% because the time records did not mention the subject matter of

---

[18]For example, the Moustakas billing entry dated 9/08/04, and representing 7.0 hours, at $420.00 per hour [$2,940.00] initially read as follows:

> Review letter to Rezneck; meeting re: deposition dates; Meeting with T. Stovall; Meeting w/interpreters; Meeting w/client and interpreters; Meeting; Work on tolling agreement brief.

Pursuant to Exhibit Z, the fee entry now reads:

> Review letter to Rezneck [.2]; meeting re: deposition [dates] [.1]; meeting w/T. Stovall [.6]; meeting with interpreters [.3]; Meeting w/client and interpreters [2.0]; Meeting [with potential expert] [.5]; Work on tolling agreement brief [3.3].

Mr. Moustakas met with attorney Stovall seven months after Stovall's motion to withdraw as counsel was granted but there is no indication of the substance of the meeting.

certain meetings, telephone conferences, or work performed.)  *See also Role Models America*, 353 F.3d 962 (reducing a fee award on grounds that time records lacked adequate detail, making it impossible for the court to verify the reasonableness of the billings with regard to necessity of the service rendered or the amount of time expended thereon).

In *Role Models*, *id.* at 971, the Court of Appeals noted that the time records contained numerous generic time entries such as "[r]esearch and writing for appellate brief" and concluded that "[s]uch generic entries are inadequate to meet a fee applicant's 'heavy obligation to present well-documented claims.'"  *Id.* (quoting *Kennecott Corp. v. EPA*, 804 F.2d at 767.)  The Court of Appeals also found deficient those time entries that mentioned communications with persons whose connection with the case was not identified.  *Id.* at 971-972.   Furthermore, the Court of Appeals found that "[d]uplication of effort is another basis on which [the] hours seem excessive." *Id.* at 972 (quoting *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. United States EPA*, 169 F.2d 755, 761 (D.C. Cir. 1999) (*per curiam*).)

In the case at bar, some of the descriptions accompanying the fee entries involve similar descriptive  deficiencies.  *See, e.g.,* fee entries by multiple attorneys dated: 6/11/04 "research re ADA claim" and  "began research on ADA claim;" 6/12/04 "ADA/1983 research;" 6/14/04 and 6/15/04 "ADA research" and  "Research on ADA damages;" 6/16/04 "ADA research" and "ADA damages research;" 6/18/04 "Began research on 1983 claims;" 6/23/06, 6/24/04, 6/25/04, and 6/27/04  "Research on 1983 damages" or "Research on 1983 damages in analogous cases;" 8/3/04 "Research re: 1983 and ADA claims;" 9/07/04 "Research re 1983 claims."  *See also* fee entries dated 8/09/04 "meeting with PRFriedman and JMoustakas [AMC 1.0 hour] [no description of subject];" 9/02/04 "Review deposition [PRF 1.0 hour][no identification of deposition];" 9/17/04

"Revise letter to W. Hall [AMC 1.0 hour] [no subject matter indicated]" 9/23/04 "t/w JTR re possible issues raised [PRF .7 hours] [no identification of issues]."[19]

Certain fee entries also demonstrate duplication of effort and/or excessive billing. *See, e.g.,* fee entries dated: 8/08/04 "Draft motion to compel discovery [AMC 6.5 hours]"; 8/09/04 "prepare motion to compel exhibits [AMC .75 hours]," and "draft subsequent remedial measures section of motion to compel [AMC 2.75 hours];" 8/11/04 "work on second amended complaint and motion to compel [JM 11.6 hours attributable to both activities];" 8/12/04 "revise motion to compel [AMC 1.75 hours];" 8/12/04 "Editing motion to compel [JM 3.0 hours];" 8/13/04 "Revise motion to compel [AMC 2.0 hours];" 8/16/04 "Work on edits to motion to compel [JM .75 hours];" 8/17/04 "Revise motion to compel [AMC 2.5 hours]" and "Meeting with AMC re: edits to motion to compel [JM .3 hours] .[20] *See also* fee entries dated: 9/07/04 "review DC opposition to motion to compel and discovery letter and begin preparing responses [AMC 3.75 hours];" 9/08/04 "research and begin drafting reply for motion to compel [AMC 2.75 hours];" 9/09/04 "work on motion to enforce reply [AMC 2.25 hours];" 9/10/04 "revise reply for motion to compel discovery [AMC 2.0 hours];" 9/12/04 "Draft reply in support of motion to compel discovery [AMC 8.0 hours]; 9/13/04 "Revise reply in support of motion to compel discovery [AMC 5.0 hours]" and "Reading defendant's opposition to motion to compel (3.5); Editing reply brief; Researching Monell issues in response to District's Opposition (2.0) [JM 5.5 hours]; and

---

[19]The undersigned notes that there is no billing entry for Moustakas for 8/09/04, regarding his attendance at a meeting.  Friedman's .3 hours billing entry for that date describes a "conf/w AMC re draft and rule 26 issues."

[20]A review of the motion to compel indicates that it was primarily a factual recitation of Defendant's deficiencies in responding to discovery.

9/14/04 "revise reply in support of motion to compel [AMC 3.25 hours]." [21]

The undersigned also finds excessive the fact that two attorneys attended the Hicks deposition on 07/09/04, resulting in $5,440.00 in fees on that day alone [excluding additional fees attributable to preparation by counsel] and the Shansky deposition on 10/07/04, resulting in $4,344,00 in fees that day [again excluding fees for preparation].   The aforementioned examples are but a small sampling of the billing entries found throughout counsel's billing records, which are either deficient in description so as to make it impossible for the undersigned to determine the reasonableness of the fees billed, or which indicate unnecessary duplication of effort or excessive fees relating to certain activities.   Following *Hensley*, counsel must demonstrate that it exercised billing judgment.  In this case, Plaintiff's counsel asserts that it did exercise billing judgment as follows:

> Apart from routine daily reductions, plaintiff has made further reductions in excess of $70,000.  Counsel for plaintiff has written off entirely the time of two senior attorneys who provided valuable advice on litigation and settlement strategy, all time expended by seventeen (17) separate timekeepers who worked on a variety of research assignments or other projects related to the case, and a portion of research time by various law clerks and associates.

Motion at 7.

The reductions of $70,000 comprise about 8% of the fees requested in this matter. Counsel's assertion that it exercised "billing judgment" by writing off all time for 19 of the 34 attorneys and staff who are listed on the billing records lends supports to the undersigned's

---

[21]Furthermore, time entries dated 9/14/04 "Review def's memo. in opposition to our motion to compel discovery [PRF 1.0 hour] [on the day that Plaintiff's reply was filed]" and 9/15/04 "review our motion to compel discovery [PRF 1.6 hours]" seem inconsistent in terms of timing, even when considered in the context of surrounding billing entries.

conclusion that this case, which did not even progress to the stage of expert depositions, was

overstaffed.  The case was litigated by three lead attorneys, billing at hourly rates ranging from

$285 to $510, as well as four associates, five law clerks and a paralegal. While any one of the

three lead counsel could have carried the lead on this matter, it is not unreasonable for two

counsel to act as co-lead counsel, or to consult with other counsel on issues requiring specific

expertise, and of course, to rely on junior associates and legal staff to perform tasks appropriate to

their levels; i.e., legal research, document handling, and so forth.  A review of the billing records

in this case evidences that all three lead counsel jointly handled the day-to-day administration of

this case, which resulted in duplication of efforts and necessitated layers of approval before

documents were filed with the Court or correspondence was exchanged with opposing counsel.

7.[22]  Accordingly, the hours billed by Plaintiff's counsel need to be adjusted downward to reflect

---

[22] *See, e.g.,* billing entries for 11/15/04 "Telephone conference with Judge Kotelly regarding guardian *ad litem* [AMC 1.2 hours];" and "Telephone conference with Judge Kotelly and opposing counsel regarding request for appointment of guardian *ad litem*, team debriefing thereafter [JM 1.5 hours]" and "Teleconference with Judge Kotelly, opposing counsel, Dr. Vernon, and Messrs. Moustakas and Chud and debriefing with Mr. Moustakas [PRF 1.4 hours]." *See also* billing entries by all three lead counsel relating to preparation of a 5 paragraph Joint Discovery Plan [114] filed on December 9, 2004: 12/06/04 "conference with Messrs. Moustakas and Friedman regarding discovery [AMC  a portion of the 1.5 hours];" "Conference with Mr. Friedman and Mr. Chud regarding discovery issues including proposed new discovery schedule [JM  a portion of the 1.5 hours];" "Team meeting with Messrs. Moustakas and Chud to discuss schedule and other issues [PRF  a portion of the 1.5 hours];" 12/07/04 "Work on revised scheduling order; conference with Mr. Moustakas regarding scheduling order and follow-up call to Mr. Rezneck [AMC .6 hours];" "Meeting with Mr. Chud regarding proposed discovery schedule (.3); review and edit Mr. Chud's draft (.3); telephone conference with opposing counsel Rezneck regarding discovery schedule, . . . (.3); [JM  between .7-.9 hours]" "review draft proposed scheduling order by Mr. Chud and send email response [PRF .2 hours];" 12/08/04 "telephone conference with defendants regarding joint discovery plan [AMC .6 hours];" 12/09/04 "Conference with Mr. Moustakas regarding joint discovery plan (.3); revise joint discovery plan (.8) [AMC 1.1 hours];" "Meeting with Mr. Chud regarding response to defendants' proposed change to joint discovery schedule and making edits thereto (.4); additional meeting with Mr. Chud in response to several additional proposals for joint discovery plan (.4); several telephone

deficiencies in billing records and duplication of effort.

### 3. Inconsistent Entries regarding Internal Meetings

Defendant argues that legal fees should be reduced in part because "the billing records of plaintiff's [attorneys] contain numerous references of an internal meeting with another member of the firm where the other member of the firm does not also document the meeting."  Opposition at 19.  The District also "takes issue with the amount of internal meetings in general."  *Id.* at 20. The undersigned's review of the billing records recognizes that there are some billing inconsistencies regarding internal meetings but finds that such inconsistencies are not grounds for a reduction in legal fees.  *See Cohen v. Brown University*, 2001 U.S.Dist. LEXIS 22438 at *65 (D.R.I.  Aug. 10, 2001) (finding that minor time discrepancies are "explainable by one of the attorneys being too busy to record [a] conference at the time and forgetting to do so later or by exercise of billing judgment.")  Nor does the number of internal meetings, in and of itself, warrant a fee reduction.[23]

### 4. Ministerial or Administrative Tasks

The District argues for a reduction in fees on grounds that the fee records indicate excessive billing for ministerial and/or administrative tasks.  *See* Opposition at 20-23, citing *Loughner v. University of Pittsburgh*, 260 F.3d 173, 180 (3rd Cir. 2001) (finding that it is not fair or reasonable for lawyers to claim the same high reimbursement rate for tasks varying from

---

conferences with opposing counsel regarding joint discovery plan . . . (1.1) [JM between .9-1.9 hours];" "review draft scheduling order from Mr. Chud and send reply with suggested additional language (.3) [PRF .3 hours]"

[23]The undersigned does note however that if the case had been managed by one or two counsel instead of three lead counsel, the frequency and duration of internal meetings would likely have decreased.

telephone calls with clients, legal research, letters concerning discovery requests, drafting of a

brief, and trial time, when many of these tasks could be effectively performed by administrative

assistants, paralegals, or secretaries.)  *See also Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d

714, 717 (5th Cir. 1974) (Courts may "distinguish between legal work, in the strict sense, and

investigation, clerical work, compilation of facts and statistics, and other work which can often be

accomplished by non-lawyers but which a lawyer may do because he has no other help

available.")

　　The District particularly focuses on time billed by Friedman, who has the highest billing

rate, and Defendant gives several examples of alleged billing for administrative or ministerial

tasks,.  These time entries are subsequently explained by Friedman in his supplemental declaration

attached to the Reply, at Exhibit P.  The undersigned notes however that, even assuming

*arguendo*, it was efficient for lead counsel in this case to personally research certain issues, make

telephone calls regarding scheduling, annotate depositions, and so forth, these tasks should be

compensated at a reduced rate since they do not necessitate legal expertise that warrants hourly

billing rates ranging from $285.00 to $510.00.

　　For example, there are multiple billing entries for July 29, 2004 through August 10, 2004

by Friedman and a paralegal, Anne Lee, who billed at the hourly rate of $120.00, indicating that

Ms. Lee was charged with organizing medical records from St. Elizabeth's Hospital into a

spreadsheet/database at the same time that Friedman was "reviewing and annotating" these

records.  It is difficult to fathom why Ms. Lee or a junior associate could not also been given the

task of annotating these records, as well as annotating depositions (*see, e.g.*, billing entry dated

8/01/04 "review and annotate deposition of Fred Staten" [PRF 2.5 hours]) or legal research (*see,*

*e.g.*, billing entries dated 7/19/04 "research re deliberative process privilege" [AMC 1.0 hour];

7/20/04 "Research on District's asserted deliberative process and other privileges" [JM 1.0 hour];

7/28/04 "DC 12-309 research" [AMC 1.5 hours]; 7/30/04 "research re statute of limitations"

[AMC 1.0 hour];  04/12/05 and 04/13/05 "Set-off research (pro rata v. pro tanto)" and "Set-off

research and draft memorandum regarding same" [AMC 10.8 hours]) or tasks such as preparation

of charts (*see* billing entry dated 7/13/04 "Prepare chart re status of written discovery" [AMC 2.25

hours]), rather than a senior attorney billing at hourly rates ranging between $285-$510.

　　Reviewing the fee records as a whole and taking into account Plaintiffs' counsel's

representations that it was sometimes necessary for lead counsel to perform tasks that did not

utilize their legal expertise, the undersigned recommends that fees be adjusted downward to

account for the ministerial work that was performed by lead counsel and billed at their usual

hourly billing rates.

### c. Fees Incurred Post-February 3, 2005 (Offer of Judgment)

　　The District argues that "Plaintiff is not entitled to attorney's fees for time expended after

February 4, 2005, except for hours reasonably expended on the fee petition."  Opposition at 23.

This assertion assumes that Plaintiff accepted the February 3, 2005 Offer of Judgment, an

assumption contradicted by the record in this matter.  While the monetary amount set forth in the

Offer of Judgment is the same as the monetary amount indicated in the June 2005 Consent

Judgment, the Offer of Judgment contained additional terms that were unacceptable to Plaintiff

and which were not incorporated in the settlement.[24]   Furthermore, Plaintiff asserts that he

---

[24]Plaintiff contends that "the Offer of Judgment required the dismissal of the CCHPS
Defendants in exchange for Defendant's $1.1 million payment . . . ."  Reply at 39.

rejected the Offer of Judgment, Reply at 39-40, citing Exhibit BBB; Moustakas Supplemental

Declaration at ¶¶28-30, and the Offer was accordingly withdrawn.  Reply at 40, citing *Grosvenor*

*v. Brienen*, 801 F.2d 944, 948 (7th Cir. 1986).[25]

     As previously noted, on February 15, 2005, discovery in this matter was stayed until

March 1, 2005, with regard to Defendants' pending motion to compel but discovery continued

with regard to Plaintiff's motion to compel.  On the following day, the undersigned granted in part

and denied in part Plaintiff's motion to compel.  On April 19, 2005, Plaintiff filed a Notice of

Settlement Status [138], indicating the Plaintiff and the District had "agreed, in principle, and

with approval of the guardian *ad litem*, to settle the case against the District . . . for an amount of

$1,100,000 . . . in compensatory damages and payment of Mr. Heard's reasonable attorneys' fees

and costs."  In light of the Notice, the undersigned entered a Minute Order dated April 22, 2005,

finding as moot the District's motion for protective order quashing a deposition subpoena, and the

District's motion to compel.  The next Court docket entry, dated June 16, 2005, reflects a

Stipulation for the Entry of Consent Judgment [139].   Plaintiff filed the underlying Motion for

Attorneys' Fees and Costs [145] on August 4, 2005, the same day the Consent Judgment [147]

was approved by the trial court .

     While the undersigned appreciates that the case was not concluded, for purposes of

---

[25]Plaintiff notes that "the Rule 68 Offer of Judgment was not extended through June 2005, but rather  was withdrawn on March 18, 2005, the date it expressly lapsed and was rejected."  Reply at 40.   Plaintiff's counsel's time sheets are inconsistent in their references  to a "revised offer of judgment" (04/07/05, 04/27/05, 04/28/05, 05/04/05), "the significance of accepting an offer of judgment and case cited therein (04/19/05), and "research [on the] implications of Buckhannon decision 'prevailing party' status within the context of an accepted Rule 68 offer of
judgment . . ." (05/19/05), as well as a "review [of] correspondence regarding offer of judgment" (05/31/05).

recovery of fees and costs, until the request for fees and costs was filed by Plaintiff on August 4, 2005, a review of the work performed after the Plaintiff filed his Notice of Settlement Status reveals that all three lead counsel took an active role in the settlement process even after there was a settlement in fact, and accordingly, there are a number of duplicative time entries and many internal conferences.  (*See, inter alia*, billing entries for 04/14/05, 04/15/05, 04/27/05, 04/28/05 [AMC, JM] and 05/04/05 [PRF], and 05/31/05.)  The undersigned finds that this repetition in work provides additional grounds for reducing fees.  Based on the undersigned's findings that counsel were overzealous in their preparation of the Fee Petition resulting in their expending excessive hours; some of the billing entries are deficient in description; there was a duplication of effort among counsel that resulted in hours billed for redundant and/or unnecessary work, including work that was performed after the case was settled in principle; and that billing rates should be reduced to reflect work on tasks that were administrative or ministerial, the undersigned recommends a 40 percent reduction in total fees claimed by Goodwin Procter.

## C. <u>Costs</u>

Plaintiff requests reimbursement of costs totaling $71,013.36.  The District contests the per page fees charged for copying and sending facsimiles, on grounds that Goodwin Procter is making a profit on such activities.  The District also contests selected charges on grounds that the services associated with those charges are not identified.  *See generally* Opposition at 24-25.  The undersigned finds that these charges are adequately explained in the Declaration of Adam Chud, attached as Reply, Exhibit O.  *See id.* at ¶¶33-47; *see also* Reply Exhibit EE.  The undersigned accordingly recommends that Plaintiff's request for costs in the amount of $71,013.36 be granted.

## IV.  Recommendation

Plaintiff is both eligible and entitled to recover attorneys' fees arising from the civil rights litigation, which was handled by attorneys Jones and Stovall, and then by counsel from Goodwin Procter.  The undersigned recommends to the trial court that Plaintiff be awarded fees in the amount of $612,658.20, and costs totaling $71,013.36.   The breakdown of fees recommended by the undersigned is: Jones - $20,100.00; Stovall - $15,300.00; and Goodwin Procter -$577, 258.20.

## V.  Review by the District Court

The parties are hereby advised that under the provisions of Local Rule 72.3 (b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections.  The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985).  If this Report and Recommendation is served on the parties by mail, calculation of the time period for filing written objections is as follows: 10 business days

(excluding weekends and holidays) plus three calendar days (including weekends and holidays).

*See CNPq-Conselho Nacional De Desenvolvimento Cientifico E Technological v.*

*Inter-Trade, Inc.*, 50 F.3d 56, 58 (D.C. Cir. 1995) (*per curiam*).

**DATED: June 16, 2006**          _____/s/_____
                                  **ALAN KAY**
                                  **UNITED STATES MAGISTRATE JUDGE**